## Kimmel v. Dickson.

1. K. delivered to a bank a certain sum of money, to be paid over to W. when he should present to the bank a warranty deed, properly executed conveying to K. certain lands; together with an abstract showing good title in W., and took a receipt from the bank reciting the purpose for which the money was so left. Subsequently, and before such deed and abstract were presented, or the money paid over, the bank failed and a receiver was appointed by the court. *Held,* that the money so deposited was a trust fund, and did not become assets of the bank, nor pass to the receiver as such.

2. The fact that upon its receipt the bank gave credit to K. as of a deposit, and mingled the money so deposited with its own, without the knowledge or consent of K., did not change the character of the transaction.

3. Under such circumstances, K. had the right to follow and reclaim the money so deposited as a trust fund, and it was the duty of the court to direct its receiver to pay the amount over to K.

(Syllabus by the court. Opinion filed April 3, 1894.)

Appeal from circuit court, Douglas county. Hon. E. G. Smith, Judge.

Action to declare a trust and to require the receiver of an insolvent bank to pay over certain moneys or so much thereof as the money in his hands would pay. Plaintiff had judgment, and defendant appeals. Affirmed.

The facts are fully stated in the opinion.

*Robert Dollard,* for appellant.

Before payment of the trust fund can be ordered in cases

like the one under consideration, the trust fund must be traced into specific assets in the hands of the receiver, or there must be cash on hand with which the trust fund is intermixed. Cent. Nat. Bank of Baltimore v. Conn. Mutual Life Ins. Co., 104 U. S. 54–77. The case of McLeod v. Evans, Assignee, 28 N. W. 173, enunciates a doctrine that goes beyond the authorities it cites in support of the reason of the rule which it announces, and goes too far in the extension of the doctrine of trusts.

As the assets of the bank were in the course of administration in equity, no priority could be given to one *cestueque trust* over another who had a claim against the general assets of the bank where he was unable to trace his trust fund into particular assets. Story's Equity Jurisprudence vol. 1, p. 588; Comp. Laws, § 4660; Storm v. Waddell, 2 Sandf. Ch. 494; Kimberling v. Hartly, 1 Fed. 574; Clark v. Rist, 3 McLean 492; Sedgwick v. Menck, 6 Blatchf. 156; Parker v. Muggridge, 2 Story 334; Carr v. Fearington, 63 N. C. 560; Fetter v. Cirode, 4 B. Mon. 584; Newdigate v. Jacobs, 9 Dana 18; McDermutt v. Strong, 4 Johns. Ch. 687; Goddard v. Weaver, 1 Woods 260; Yeatman v. New Orleans Sav. Inst. 95 U. S. 764; Brown v. Nichols, 9 Abb. Pr. N. S. 17.

*G. P. Harben*, for respondent.

The money in dispute was placed in the bank to pay one Ward on presentation of a warranty deed and abstract to certain lands. The bank failed and the defendant is the receiver. The object of this action is to declare the deposit a trust fund. Although the relation between a bank and its depositor is that merely of debtor and creditor, yet the fund does not change its character from the fact that the money had been deposited in the bank to the credit of the depositor. If the money was impressed with the trust in favor of another, the deposit will remain subject to the trust. Bank v. Gas Co., 30 N. W. 440; Van Allen v. Bunk, 52 N. Y. 1; People v. City Bank, 96 N. Y. 32; Cregie v. Hadley, 99 N. Y. 131; 1st N. E. Rep. 537; Bank v. King, 57 Pa. St. 202; Peak v. Ellicott, 30 Kan. 150; 1 Pac. 499; Bank v. Ins. Co., 104 U. S. 54.

In cases of general deposit the money becomes the property of the bank and the relation of debtor and creditor exists. In cases of special deposit the money is not the property of the bank but is held in trust for the owner to be paid on demand. Bank v. Hughes, 17 Wend. 94; Marsh v. Bank, 34 Barb. 298; Bank v. Bank, 46 N. Y. 82; Story on Bailments, 9 Ed. 88; Dawson v. Bank, 5 Ark. 283; Bank v. Rushmore, 28 Ill. 463; McLeod v. Evans, 28 N. W. 1, 3.

KELLAM, J. In this case the facts are simple and undisputed. On and prior to the 9th day of June, 1893, the Douglas County Bank was a banking corporation under the laws of this state, doing business at Armour, in said Douglas county. On that day respondent Kimmel left with such bank $265, to be paid to E. C. Ward on presentation by him of a warranty deed conveying to Kimmel certain described land, with an abstract showing good title in the grantor. The bank gave Kimmel a receipt therefor, reciting that it was so received for such purpose. On the 17th day of June following, and before the deed was presented and the money paid over, the bank failed, and respondent Dickson was appointed its receiver, and as such received and took possession of all the assets and property found in the possession of the bank, of which $259.71 was cash. Subsequently both Kimmel and Ward demanded their money of the receiver, and this action does not involve any controversy between Kimmel and Ward, but simply whether the receiver of the bank should be required to pay over the amount, or so much thereof as the money on hand will pay; or whether the cash so found on hand at the time of the failure of the bank is assets in his hands, to be distributed with and as the other assets of the bank. The court below ordered the receiver to pay over to respondent the said $259.71 so found in the bank at the time of its failure and taken possession of by him, and this appeal is from such order. In the affidavit of Humbert, secretary of said bank, it is stated that when this money was so left with

the bank it "was treated the same as any other deposits of said bank, and mixed with the other money therein." It is not intimated that this was done with the knowledge of Kimmel, or that he in any manner consented to it. Upon these facts it would appear that the money was left with the bank in trust for a particular purpose. The bank could not afterwards, without the acquiescence of Kimmel, change its relation to him from that of a bailee or trustee to that of a general debtor. We apprehend that no different principle is involved because one of the parties happens to be a bank. Suppose, under the same circumstances, Kimmel had left the money with Humbert personally, and he had failed and made an assignment, would this money, so found in his possession, pass to his assignee as his property? If so, when and how did it become so? That he, or the bank in this case, had, without the consent of Kimmel, diverted the money and used it for some other purpose, ought not to affect Kimmel's rights. Abuse of a trust can confer no rights on the party abusing it, or on those claiming in privity with him. It is not claimed that the $259 found in the bank's vault when it failed is the very money, or a part of it deposited by Kimmel, and it is not necessary that it should be so. If the money delivered to the bank had been used by it in its business it had presumably either paid its debts *pro tanto*, or increased its assets; and the general creditors of the bank would be in the same condition if the money found in its possession were paid over in execution of the trust as though the money deposited had been kept separate, and the identical money received had been so paid over. Peak v. Ellicott, 30 Kan. 156, 1 Pac. 499, was a case entirely analogous to this. Peak had left with the bank of which Ellicott, upon its failure, became assignee, money to pay a note, which the bank was to send for. As in this case, he took a recept showing the purpose for which the money was left. The bank passed the amount to the credit of Peak. After the failure of the bank, it not having paid the note, Peak brought action against the assignee, asking the

same relief as is asked in this case, to wit, that the assignee be required to pay over the amount in full as a trust fund. The supreme court reversed the trial court, holding that the transaction constituted a trust; that the · relation created was not that of a debtor and creditor, but rather that of principal and agent, or bailor and bailee; and that the subject of such trust did not pass to the assignee as assets of the bank. It was held further that the manner in which the bank had treated the fund · by crediting it to Peak and mixing it with its own money did not affect his right to claim the amount from the funds on hand. Ellicott v. Barnes, 31 Kan. 170, 1 Pac. 767, was a similar case and the same rule controlled. McLeod v. Evans, 66 Wis. 401, 28 N. W. 173, 214, applies the same principle with the same result, where a draft had been left for collection with a banker who afterwards, and before the depositor had received its proceeds, suspended, and assigned. The court held that the proceeds of the draft constituted a trust fund which did not pass to the assignee, and, there not being sufficient cash in the hands of the assignee to pay the amount, that the same should be a lien upon the assigned estate. The same principle, though to somewhat different facts, was applied in People v. City Bank of Rochester, 96 N. Y. 32, and again in People v. Bank of Dansville, 39 Hun. 187.

The suggestions of appellant that this money is imperatively needed to meet immediate expenses in administering the bank's estate, can have little weight when the money itself is no part of the estate, but belongs to another. There would be no justice in requiring Kimmel to furnish means to assist in settling the affairs of the bank. On behalf of appellant it is further urged that the answer shows that at the time of its failure the bank held a large amount of other special deposits of the same character as this $265; and it is insisted that by the order appealed from Kimmel is given a priority to which he is not entitled over other equally meritorious claimants. It is

doubtful if the proceedings convey the meaning which counsel thus draws from them.    The answer of the receiver is evidently framed upon the theory that, notwithstanding the circumstances of this deposit, it was a general deposit, and concludes with admitting the indebtedness of the bank on account of it.    After stating how and for what purpose it was made, it proceeds: "And it is alleged that said $265 was deposited on account of the plaintiff as herein stated, and not otherwise, and was carried to the credit of the plaintiff by the defendant corporation the same as any other deposits of said bank, and the money constituting said sum of $265 was mixed with other money deposits of said bank, and its identity destroyed.    *    *    *    And that, after the deposit of said $265, and previous to the 17th day of June, 1893, said defendant bank received on deposit moneys from its depositors to the amount of $7,786.63, to be paid out the same as said 265, the same being funds belonging to depositors, and no part of which has been paid to said depositors, which was mixed with its general deposit funds, of which said $265 formed a part at the time of its deposit.    The defendant further alleges that the total amount due depositors by said defendant bank on said 17th day of June, and which remains unpaid, is the sum of $20,778.08, and defendant states that, except said $259.71, cash on hand, the assets of said defendant bank consists of horses, equities and rights of action; admit that the plaintiff and said E. C. Ward have each demanded said $265, and defendants have each refused to pay the same; and admit that defendant corporation is indebted to plaintiff in said sum of $265 as aforesaid, and no part thereof has been paid." . Upon this point the affidavit of Humbert, the secretary of the bank, is as follows:    "That the said $265 deposited by plaintiff as aforesaid was treated the same as any other deposits of said bank, and mixed with the other money therein.    *    *    *    That after the deposit of said $265, and previous to the 17th day of June, 1893, said defendant bank received on deposit money to the amount of $7,786.63, which was mixed with the

depost funds of said bank, and all of which was paid out by said defendant corporation prior to June 17th. except said sum of $259.71." Reading the answer of the receiver and the affidavit of the bank's officer together, I think we ought to understand, not that the bank had received and held over $7,000 of special deposits of the same character as the $265, but that between the dates named that amount had been deposited generally, and had been treated by the bank, and used and paid out the same as the $265. To us these statements do not mean that the bank held other special deposits, delivered to and received by it for, and so appropriated to, a particular purpose or trust; and, even if they were so intended, there is nothing before us to indicate that any such depositor ever has, or ever will, assert his rights. The plaintiff having established his right to be paid, no question of priority is presented until it is shown that there are rival claimants in position to and disposed to raise the question, and that they will suffer by allowing plaintiff to be presently and first paid. Payment to him ought not to be denied or delayed upon a bare suspicion that others similarly situated, now sleeping on their rights, may eventually assert them. The order of the circuit court is affirmed.