594

Kansas City Court of Appeals.   December 7, 1931.

*Walter C. Goodson* and *Geo. N. Davis* for appellant.

*Ed. G. Robinson* and *C. G. Buster* for respondent.

ARNOLD, J.—This is an action to establish a preferred claim in the amount of $1448.38, against the assets of the defendant bank in the hands of the commissioner of finance for liquidation. No question arises upon the sufficiency of the petition which, in part, bases the cause of action upon an alleged special deposit, and charges "that the Central Coal & Coke Company was a customer and a special depositor in said bank under an arrangement by which the amount of money needed by the Central Coal & Coke Company for the semi-monthly pay roll was sent to said bank, for which the said bank was paid by the rate of one dollar ($1) per one thousand ($1,000) dollars; that said money so deposited in said bank was a special deposit for a special purpose and not intended to swell and go into the assets of said bank, under a special agreement between the said bank and the Central Coal & Coke Company; and that on or about the 21st day of February, 1930, and while said bank was insolvent and known to be insolvent by its officers and agents, the Central Coal & Coke Company made a special deposit in said bank, for the purpose aforesaid, of $7123.11, and checks against the same ex-

ceeded the withdrawals in the sum of $1448.38, which amount of money was in the defendant bank at the time it closed, belonging to the Central Coal & Coke Company, and which plaintiff is entitled to recover."

Plaintiff demanded judgment in the sum of $1448.38, and that said judgment be declared a preferential claim. The answer was a general denial.

The cause was tried at the April, 1931, term of the circuit court of Macon county, and the court adjudged "that said claim be and is hereby disallowed as a preferential or priority claim" and "that plaintiff is entitled to recover of the defendant for the sum so claimed in his petition as a common claim." From this judgment plaintiff duly appealed and assigns error in the denial of a preference because the evidence shows there was a special deposit.

Plaintiff introduced the following agreed statement of facts:

"It was agreed that the State Bank of Bevier was operating in Bevier, Missouri; that on or about the 25th day of February, it was closed by the directors; that on the 25th day of February, it voluntarily passed its assets and affairs into the hands of the commissioner of finance of Missouri; that L. L. Vaughn was placed in charge of the bank by the commissioner of finance and has since that time had charge of all of the assets and books of the State Bank of Bevier, and notice was given to creditors to prove their claims on or before the 15th day of July, 1930. Further admitting, this claim sued on was filed within the time and allowed as a common claim; and that within six months thereafter, this suit was brought for preference; further admitting that the commissioner of finance in charge of the bank now has sufficient funds on hand to pay this claim if allowed as a preferred claim; it was further admitted that the Central Coal & Coke Company, is in the hands of a receiver, and that J. M. Bernardin is the receiver. It is further admitted that the sum of $1448.38, sued on in this claim went into the hands of the commissioner of the bank."

The following letter also was introduced in evidence by plaintiff:

"Central Coal & Coke Company,
"Keith & Perry Building,
"Kansas City, Mo.

"A. B. Ewing, Comptroller.

"In your reply refer to file 383
"October 30, 1924.

"Mr. W. A. Rowland, Cashier,
"State Bank of Bevier,
"Bevier, Missouri.

"Dear Sir:

"Our agent at Bevier, Mr. J. E. Agee, states that he has talked to

you in regard to handling our mine pay rolls by check through your bank. He states that you will be willing to do this for $1 for each $1,000 of pay roll.

"As you know the Bevier mines are not working at present but we would like to get this worked out so that if the Bevier District starts we will have the pay roll matter settled. Under the new arrangement, we would pay the miners two days in advance of the Missouri mine pay roll day. The detailed statement of the amount which is due the miner as well as his check would be given to him two days before his regular pay day.

"Mr. Agee can inform your bank four days before our regular pay day of the amount and the denominations which will be required to meet the pay roll. At that time you can get in touch with the Commerce Trust Company and have them send the funds to you if this is necessary. At the same time Mr. Agee notifies your bank of the funds that will be needed to meet the pay roll, he will also notify our treasurer here who will deposit the total amount of the pay roll to your credit in the Commerce Trust Company. You can then give us credit on your accounts for the amount of this pay roll, and when the agent issues the pay checks, these will be charged against this pay roll account. We will then have suitable checks printed to cover our requirements.

"Your charges in this connection can be paid by the agent through his account in your bank. You can furnish him with a statement of your charges monthly.

"I presume that the method of handling the pay roll as outlined above will be satisfactory. I should like to hear from you in regard to this matter.

"Yours very truly,

ABE :MB                    "(Signed) A. B. Ewing,

"Comptroller."

No reply to this letter appears in the record, but Mr. Agee testified he was the agent of the Central Coal & Coke Company at Bevier, and had complete control of the pay roll; the company had about 225 men; that he talked with the cashier of the bank about the letter and made arrangements with him about the pay roll account; the bank was to handle the pay roll and the company was to pay the bank $1 a thousand for the service; the company was to deposit the money with the Commerce Trust Company in Kansas City the day preceding the pay day. He stated:

"We paid on the 8th and 23rd, unless it fell on Saturday or a holiday, and the morning of the pay day I would take my bank book up and they would credit me with the deposit, and we deposited the exact amount we were issuing pay checks for, for that day. We issued the pay checks on the same day . . . in case a miner didn't call

for his check, we didn't issue the check, or in case he came in and settled up before pay day, we immediately issued a check for whatever balance was left in that deposit and put the money in the office safe and used it in the regular office business.''

He said the account was balanced within two or three days, and it was understood at the bank they were to carry no balance. That was the prevailing practice and course of business from 1924, to the time the bank closed its doors. Witness stated that under this arrangement they paid two days earlier than the regular Missouri mine pay roll day; that the last credit on the account was on February 21, 1930, in the amount of $7123.11, representing the deposit to cover pay checks that day; that checks aggregating $1448.38, had not been returned to the bank; that the bank had authority to pay money out of this account only on the form of check used for the pay roll, and no other checks were drawn. ''Q. What was the form, do you know? A. Yes, sir. There was two checks. One was blue and the other yellow. The blue was used on the 8th pay day and the yellow on the 23rd pay day. A regular bank check was never drawn on this account from the beginning in 1924, until the time it closed.''

If a miner would draw his money before pay day, the witness would draw a check payable to himself as agent.

''After each pay day I drew money out of this account as agent, and this was drawn out on the same kind of a check, regular pay roll check, known as labor due Central Coal & Coke Company, to balance. . . . The checks used checking against this account were not ordinary bank checks but were regular pay roll checks, issued for wages due for labor . . . there wasn't any deposit to this account except a pay roll correction or pay roll deposit. Within two or three days we always balanced up this account and drew out any money for checks that had been issued but had not been called for.''

Defendant introduced two witnesses, the first L. L. Vaughn, liquidator of the affairs of the defunct bank, who was examined as to the account of plaintiff, shown by records in his hands. The second, a Mr. Thomas, assistant cashier of the bank since 1909, who testified:

''I knew of the existence of the account of J. E. Agee, agent. Checks drawn on this account were signed J. E. Agee, agent. When deposits were made to this account they would be entered on a deposit slip and posted on the ledger sheet. During the time I was there, any check that came in signed J. E. Agee, agent, was honored and charged against this account. I do not know of any arrangement between Agee and this bank, in reference to this account, by which only certain checks were to be honored against it.''

On cross-examination, this witness testified as follows:

"Q. You were paid $1 a thousand to handle that account, weren't you? A. Yes, sir.

"Q. You knew it was a pay roll account, didn't you? A. Supposed to be. . . .

"Q. You knew it was a pay roll account? A. Their checks all drawn against that account.

"Q. Every one pay roll checks, weren't they? A. No, some of them were checks they withdrew cash on it.

"Q. You mean Agee? A. Yes, sir.

"Q. On what kind of checks? A. On his own.

"Q. J. E. Agee, agent? A. Yes, sir.

"Q. They were on one of those pay roll checks too? A. Yes, sir.

"Q. That was to take out the pay roll balance wasn't it? A. I suppose it was; I don't know what he did with the money, he came up there quite frequently.

"Q. I am asking you if that did not take out the balance? A. Yes, sir.

"Q. That was done twice a month wasn't it? A. Yes, sir.

"Q. Every time? A. Yes, sir.

"Q. There wasn't any balance left in your bank? A. No, just the outstanding checks.

"Q. They carried no bank account with you at all except this? A. Not in that account.

"Q. They had another account, didn't they? A. Yes, sir.

. . . . . . .

"Q. Did you ever see this letter, Exhibit A? A. I don't know that I have seen it, but I knew that was the—

"Q. You knew that was the arrangement? A. Yes, sir.

"Q. This deposit was made in Kansas City, wasn't it? A. Credited up there, yes, sir.

"Q. And that was equal to the amount of the pay roll each two weeks? A. Yes, sir."

Plaintiff contends the court erred in refusing to declare its claim preferred because the testimony of both parties shows the deposit in question was for the specific purpose of meeting a pay roll, and was so understood and treated by the bank; that the pay roll checks were issued at the time, or before the deposit was made. The evidence shows the account was opened in 1924, and under specific directions of the depositor it was intended to be a pay roll account, was so recognized by the bank and the bank was paid a small amount for handling it, and that no checks were made or charged against it except for pay roll purposes. Defendant's testimony shows the account was carried in the general ledger, but this is by no means decisive of the character of the account and may be regarded as a mere item of book keeping which could not change the relation of the

parties theretofore established by a course of dealing and understanding between them. As the court said in Evans v. People's Bank, 6 S. W. (2d) 655:

"Relationships are created by the conduct or agreement of both parties, and not by the voluntary act of one party. without the knowledge or consent of the other."

Also in Ellington v. Cantley, 300, S. W. 529, 531, it is said:

"If the facts and circumstances surrounding the making of a deposit show such deposit to be special, the bank receiving the deposit could not change its character by wrongfully placing it to the credit of the depositor in his general checking account. . . ."

In the case of Craig v. Bank of Granby, 210 Mo. App. 334, 238 S. W. 507, decided by the Springfield Court of Appeals, the court denied the contention of plaintiff, for the reason certain elements necessary to make the deposit in question special were lacking, but the principles of law relied upon by plaintiff herein are recognized, the court saying:

"Plaintiff can only recover in this case by showing that this deposit was a special deposit made to meet certain pay roll checks then outstanding and that the bank accepted it as such. . . . All previous deposits made by the same party for a long time prior to this one had been made as a general deposit and if the character of this one was to be changed to a special deposit, there should have been some clear direction given by the depositor that would carry to the bank the information that this was a special. deposit and how it should be disposed of by the bank. To make that proof in a way to require the bank to hold $1000 to the credit of the mining company and to pay no checks out of it except on pay roll checks, specific instruction in some form should have been given the bank by which when a check should be presented it could determine whether it was a pay roll check and was to be paid out of that particular fund. [Meyers v. Twelfth Ward Bank, 58 N. Y. Sup. 1065; State National Bank v. Dodge, 124 U. S. 333.]"

Under this ruling, it is apparent every element necessary to constitute this pay roll account a special deposit for a specific purpose is present and is evidenced by a course of dealing through a term of years. All other essential facts of a preference are shown or admitted. There was a written direction and a verbal agreement between the parties that deposits made in a certain manner should be used for the specific purpose of meeting pay roll checks which were written at the time of the deposits, and for handling the account the bank was to receive a small remuneration. The testimony of both plaintiff and defendant shows this understanding was followed in practice for a period of about six years. It has been held by this court:

"Where a bank has mingled a special deposit with its general funds, the special depositor can follow the deposit into the hands of an assignee of the assets of the bank after its insolvency, since those assets were increased by the mingling of the funds to the amount of the special deposit." [Schulz v. Bank, 246 S. W. 614.]

In Marshall v. Bank, 253 S. W. 15, 215 Mo. App. 365, it is said by the Springfield Court of Appeals:

"Any number of cases in Missouri hold that there can be a special deposit, such as was made in this case, and even though the money is mingled with the funds of the bank and cannot be identified, yet the depositor can claim the full amount of the deposit out of the assets of the bank or from those who are entrusted with the keeping of same. [Harrison v. Smith, 83 Mo. 210; Stoller v. Coates, 88 Mo. 514.]"

The uncontroverted evidence of plaintiff, the admissions and reasonable inferences to be drawn from defendant's evidence, the course of dealing between the parties clearly establish the fact that the pay roll account carried in defendant bank was a special deposit and was so understood and treated by said bank. The relationship between the parties was not that of debtor and creditor, such as arises upon a general account kept in a bank, but was that of principal and agent, and the bank being the agent of plaintiff, with a special fund in its hands for a specified purpose, had no right or authority to treat the account other than as a special deposit. The money remaining in this account was a trust fund which plaintiff was entitled to recover in full, under the evidence and the admission that it was in the hands of the liquidator. The authorities clearly sustain our view, and it results that the learned trial court, in denying a preference to plaintiff's claim, was in error. The judgment is reversed and the cause remanded with direction that the court enter judgment in favor of plaintiff for a preferred demand and to the amount of its claim, in accordance with the views herein expressed. All concur.