C. W. Spicer, Respondent, v. Round Prairie Bank of Fillmore, Harrison Commissioner, Appellant.—71 S. W. (2d) 121.

Kansas City Court of Appeals.   April 2, 1934.

*Booher & Wolverton* for respondent.

*Grover C. Sparks* for appellant.

SHAIN, P. J.—This is an action by C. W. Spicer, plaintiff below respondent herein, asking that a claim which he has against Round Prairie Bank of Fillmore, Missouri, a banking corporation, be adjudged to be a preferred claim.

It is disclosed that the said bank was closed at the end of the day's business of February 27, 1932, that the bank was taken in charge by O. H. Moberly, Commissioner of Finance of Missouri, and placed in the charge of Glenn A. Jackson, Special Deputy, for liquidation.

It appears that in September, 1931, Mr. Barnes, cashier of the bank, called the claimant, C. W. Spicer, to the bank and offered to sell to him a $5,000 note which the bank had, and the occasion for calling Mr. Spicer, was that under the existing conditions it was advisable for the bank to have the money to hold up the reserve. It appears that the bank was solvent at that time. It appears that Mr. Spicer had United States bonds and that same was in charge of the bank for safe keeping and the cashier asked Mr. Spicer to make sale of $5,000 worth of these bonds so as to buy the note. An agreement to sell the bonds and purchase the note was made, conditioned that a new note be caused by the bank to be executed by the payees and same be secured by a deed of trust on a 160 acre farm. It ap-

pears from the record that the bank, through its cashier, undertook to secure the new note the same to be made payable direct to Mr. Spicer and the bank was also given the right to make the sale of the bonds, the proceeds of which were to be used in the transaction.

The bank through its cashier sold the bonds, deposited the proceeds to the credit of Mr. Spicer, gave to him a duplicate deposit and entered the deposit in the general checking account of Mr. Spicer. It appears that at all times thereafter there was on deposit in Mr. Spicer's account considerable in excess of the $5,000 and that while Mr. Spicer continued to check upon and deposit in this account that he at all times kept in said account sufficient funds to fully carry out his part of the agreement. It is shown that there were questions of title and negotiations that delayed the bank in the transaction. The $5,000 note held by the bank had been placed as collateral on loan made from correspondent bank in St. Joseph, Missouri, and when all other matters were ready for consummation, the St. Joseph bank refused to return the note to the Round Prairie Bank. After the bank's failure to secure the return of the note, the cashier informed Mr. Spicer of this fact, using the following language: "Those American National Bank people have went bank on their word with me, and it is causing me to go back on my word with you about the note." It appears that this was the first knowledge that Mr. Spicer had of this situation and this knowledge and the above explanation was made to him on the evening of February 26th before the bank closed at close of business February 27th.

At the close of the evidence the court took the case under advisement and on March 31, 1933, entered judgment for the claimant C. W. Spicer, respondent herein, adjudging to him a preferred claim in the sum of $5,000.

From the above judgment, the Commissioner of Finance has appealed.

## Opinion.

The appellants present that:

"I.

"The presumption is, that a deposit is general, so the burden is on the depositor, in this case the respondent, to show that his deposit is special.

"II.

"Even though a deposit be made, with such instructions as at the time make it a special deposit, if it remains under the control and direction of the depositor, it becomes a general deposit.

"III.

"Even though no checks were drawn which required any part of the deposit of $5,000 to pay, if the depositor had the right to draw them and look to the bank for its payment, then the deposit became general.

528

"IV.

"If the relationship of debtor and creditor existed between plaintiff and the bank, he is not entitled to preference."

Respondent in reply presents that:

"1. Relationships are created by the conduct and agreements of both parties; and if the facts and circumstances surrounding the making of a deposit show it to be special, the bank could not change its character by wrongfully placing it to the credit of the depositor in his general checking account.

"2. Relationships are created by the conduct and agreement of both parties.

"3. The relationship between the parties was not that of debtor and creditor such as appears with a general deposit, but that of principal and agent. The bank being agent with a special sum in its hands for a specified purpose to which it was not applied; and it can be recovered as a trust deposit.

"4. Although the account was carried in the general ledger that is by no means decisive of its character and may be regarded as a mere item of bookkeeping.

"5. Ordinary lapse of time alone does not constitute laches, but some change in circumstances making it inequitable to grant relief is essential.

"6. The $5,000 deposit mentioned was placed in the bank by virtue of fraudulent representations and can be recovered as a preference."

Under the Missouri law it is the duty of the circuit court, in matters of preference as presented in this case, to determine the equities. While the conclusions reached by the circuit court are not binding on this court of review, still it has been repeatedly stated by our appellate courts that great weight will be given to the finding of the circuit court.

The burden is upon the claimant, respondent herein, to show that the $5,000 in issue was a special deposit.

The purpose and the intent of the deposit must both enter into the solution of the question and it must be shown by the evidence that the bank had, in fact, no contract right to use the deposit as a general one. [Craig v. Bank of Granby, 238 S. W. 507; Missouri Mutual Association v. Holland Banking Co., 290 S. W. 100.]

A deposit may be special though mingled with other funds. The *bona fide* contract between the parties must determine the issue. [Mattes v. Cantley, 39 S. W. (2d) 412; Central Coal & Coke Co. v. State Bank of Bevier, 44 S. W. (2d) 188.]

We must determine from the contract, as testified to by both the claimant and the cashier of the bank, and from the conduct, not of one party alone, but from the conduct of both parties as to whether the deposit was special or general and the fact that the money was

placed in the claimant's general checking account by the cashier of the bank is not conclusive, but is a fact to be considered together with all other facts and circumstances in evidence. [Kelley v. Joplin State Bank, 63 S. W. (2d) 171.]

Change in circumstances as well as lapse of time must enter into the determination of the equities involved in claims for preference such as is here involved. [Wauer v. Bank of Pendleton, 65 S. W. (2d) 167.]

The general rule is that a deposit, though special when made, may become general by the after conduct of the depositor and the mere fact that the depositor has issued no checks to deplete his account below the amount specified is not conclusive that the special deposit may not for other reasons become general. In these matters as in all matters of contract, the minds of the contracting parties must meet. If the proceeds of the bonds in issue were accepted by the bank in trust for a certain and fixed purpose and the claimant in all good faith left the designated proceeds in the bank for the purposes of the mutual agreement, then the mere conclusion of the cashier as to what he would have done, if the claimant had broken the agreement and presented a check for the money, cannot work the end of changing the deposit from special to general. Equity looks to the whole transaction and comes to the aid of those who with clean hands and good conscience have kept faith with the purposes of the agreement.

The expression of the cashier to the effect that the St. Joseph bank was not keeping its word with the bank and thereby causing the bank to go back on its word with claimant is not conclusive that the agreement between the bank and claimant was terminated, as the expression may well relate to matters of delay as to matter of termination.

While the issue presented herein is a close one, still a close study of the law and the facts leads us to conclude with the court below that claimant is entitled to a preference. It appears clear that the bank assumed, through its cashier, to act as trustee in the whole matter. The bonds, we conclude, were taken over by the bank as trustee for claimant. It was the bank that sold the bonds and received credit in its correspondent bank, thereby augmenting its cash reserve. Thus was fully accomplished the purposes of the bank in entering into the agreement with claimant, respondent herein, and thus we conclude is shown full compliance by claimant with all conditions of the agreement to be performed by him. Under such circumstances the bank, we conclude, was in duty bound to deliver to claimant the note secured by trust deed or restore to claimant the amount of proceeds of the bonds. Preference for five thousand dollars is all that is asked for. We conclude that the action of the circuit court conforms to the law and the equities of the case.

Judgment affirmed. All concur.