BOROUGH OF DEAL, complainant-respondent,

*v.*

ASBURY PARK AND OCEAN GROVE BANK, defendant-appellant.

[Submitted February 15, 1935. Decided May 17, 1935.]

Mr. *Lester C. Leonard,* for the appellant.

Mr. *William A. Stevens,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

The conclusions of the vice-chancellor were oral, and apparently delivered at the termination of a short hearing. They are dated September 13th, 1934. This was several months before the decision of this court in the case of *Maurello* v. *Broadway Bank and Trust Co., 114 N. J. Law 167,* which was argued October 17th, 1934, and decided January 10th of the present year. We consider that the *Maurello Case* is controlling, and that the principles therein stated, when applied to the facts of this case, require an affirmance of the decree below.

The question that was tried out, and as to which the facts apparently are not at all in dispute, is whether a deposit on July 1st, 1931, by the borough of Deal in the defendant bank of a little over $100,000 was a special deposit ear-marked for a particular purpose, or in law a mere general deposit which legally, as well as in fact, became part of the general funds of the bank, as in the *Maurello Case.*

On the first theory there would be a bailment or, if the word be preferred, a "trust" of this money. On the second,

there would be merely a debt. The importance of the distinction lies in the fact that although the amount so on deposit had been reduced to about $7,000, the bank was closed by the commissioner before all the fund had been used for the purposes for which it was intended, and that the bank, when reopened, claimed that the borough was entitled only to its *pro rata* percentage of the balance as on an insolvency. In the *Maurello Case,* as in this, the bank was closed after the making of the deposit. The claim of the plaintiff in that case was that the deposit had been specially ear-marked for the purpose of paying certain specific outstanding checks and the bank had simply been designated merely as agent of the depositor for the purpose of using that specific money to pay those specific checks. The plaintiff's claim in that case broke down on the facts; but the legal distinction was plainly pointed out by Chancellor Campbell.

In the present case the sole question argued is whether Vice-Chancellor Berry was right in saying that the deposit was a special one and amounted to what he calls a trust.

The facts, as we have said, are not in dispute. The borough of Deal owed the sum of $99,000 in bonds which, together with the coupons, were made payable at the United States Mortgage and Trust Company, in New York. Evidently there was some arrangement, not clearly shown by the evidence, whereby that company was to honor bonds and coupons there presented pursuant to the terms of the bonds, and look for reimbursement to the defendant, Asbury Park and Ocean Grove Bank. That bank naturally looked in turn to the borough; and the borough in anticipation of the presentation by the New York bank of bonds and coupons as they fell due, lodged with the Asbury Park bank from time to time as each semi-annual interest accrued, sums of money sufficient to meet the demands of the New York bank as made. The account in the Asbury Park bank was entitled "Borough of Deal, Coupon Account;" and a copy of the account in the books of the bank shows that as early as July, 1928, the borough began to deposit moneys in the uniform amounts of $2,227.50 each (being two and one-quarter per

cent. on $99,000) to meet definite coupons which were due to be presented at or shortly after the dates of deposit. From this account it appears that on July 2d, 1928, the sum of $2,227.50 was deposited and on November 1st was exhausted and the balance reduced to zero. On January 2d, 1929, a similar amount was deposited, and by March 14th it had been drawn out and the balance reduced to zero. On July 1st, a similar amount was to fall due and by October 30th that had been reduced to zero. On January 1st, 1930, the same, reduced to zero January 16th, 1930. July 1st the same reduced to zero October 6th. January 1st, 1931, the same, reduced to zero June 4th. Now each of these amounts of $2,227.50 is interest for six months at four and one-half per cent. on $99,000. The transactions, of course, were all closed out, but the figures are significant, because they lead up to the particular transaction out of which the suit arises, viz., that on July 1st, 1931, the $99,000 of bonds, together with $2,227.50 of July 1st coupons, were to fall due. So on that date the treasurer lodged in the defendant bank two checks, which apparently, were duly collected, one for $99,000 and the other for $2,227.50, with a deposit slip reading that the deposit was made by the "Borough of Deal Coupon Account" and duly receipted by the teller.

Against this, $69,337.50 was cashed in on July 8th, $16,567.50 on July 16th, and $8,180 on September 26th. It will be noted that this last item would tie with $8,000 of principal and six months' interest thereon. This left a balance of $7,142.50 applicable to $7,000 of bonds and $157.50 of coupons. The case shows a discrepancy of $15 here as the borough claimed that the balance should have been $7,157.50. However, apart from this minor matter, the evidence seems perfectly plain and the facts seem undeniable.

In the *Maurello Case* the rule was declared, that if the money "is deposited to be kept intact and not commingled with other funds of the bank * * * or is devoted and dedicated to a particular purpose or requirement of the depositor or the payment of particular debts or obligations of the depositor," it is a special deposit, and failing applica-

tion as indicated, the depositor is entitled to its return. *114 N. J. Law 167* (at *pp. 173, 174*). That case, as we have said, is controlling. The additional details in the present case that the obligations were payable not at the bank of deposit, but at a bank in New York, and that the money was placed in the Asbury Park bank for the purpose of paying the demands for reimbursement by the New York bank, create no legal change in the situation.

As to the suggestion that any trust was for the benefit of the bondholders rather than of the borough, the vice-chancellor correctly pointed out that the borough had been obliged to take up the $7,000 of bonds after a judgment, and became clearly subrogated to the rights of the former holders.

The decree will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.

*For reversal*—None.