58 P.(2d) 1186

## PANKEY v. FIRST NAT. BANK OF HOT SPRINGS.

No. 4124.

Supreme Court of New Mexico.

May 25, 1936.

Rehearing Denied June 27, 1936.

W. C. Whatley, of Las Cruces, and E. D. Tittmann, of Hillsboro, for appellant.

Walter Cochrane and Joseph Gill, both of Albuquerque, for appellee.

BICKLEY, Justice.

The appellee Pankey sued the First National Bank of Hot Springs for damages for negligence in failing to collect a check for $21,370, which was presented for payment on the 14th day of November, 1928. The check was drawn by E. L. Thompson on the defendant bank in payment of the purchase price of cattle a day, or two before it was presented for payment.

Appellee sent the check to the appellant's bank by his father, Rube Pankey, who testified as follows:

"Q. What did you do with that check? A. I taken it to Hot Springs on the morning of the 14th about ten o'clock, to Mr. Matson.

"Q. Took it to the bank and presented it to Mr. Matson. Then what happened? A. Well, Mr. Matson told me Mr. Thompson didn't have any money there.

"Q. Did he say he didn't have any at all? A. Yes sir, he did. I talked to Mr. Matson. I said 'Sam, what shall I do. I want your advice on this thing'. I said 'If we lose this money it will ruin us. What do you think about me going to hold up these cattle?' He says: 'No, I wouldn't do that. Just leave the check in here for collection. I guess Mr. Thompson will pass the money down in this bank to pay this off' and I did so."

The case is reflected in the instructions of the court to the jury, a portion of which are as follows: (Italics ours.)

"This is a civil action in which the plaintiff seeks to recover of the defendant, the First National Bank of Hot Springs, damages for its failure and neglect to exercise due diligence in the matter of the collection of a certain check, which it is alleged was deposited in said bank by the plaintiff, a customer of the bank, on the 14th day of November, 1928. It is admitted that a credit should be allowed against the amount of the check and it is alleged that the balance unpaid is $10,370.00. The defendant denies that the check was deposited except for collection and denies that it, the bank, failed to exercise due diligence in the collection thereof. Therefore the contentions between the parties are narrowed down to the sole question of the conduct of the bank in handling this item. The plaintiff alleges that at the close of the bank's day business on which the check was deposited *and on divers time thereafter* there was deposited and was on deposit in said bank to the credit of the drawer of the check, Mr. Thompson, sufficient money from which the collection could and should have been made

to pay the check, but that by the lack of due diligence on the part of the defendant, defendant failed to collect or pay the amount of said check or any part thereof, to the damage of the plaintiff, which allegations the defendant The First National Bank of Hot Springs denies except that it admits that on November 14th, 1928, the day on which such check was left with it for collection the plaintiff Joseph L. Pankey was a depositor in the First National Bank of Hot Springs and further says that on said date there was not sufficient funds in said bank to the credit of E. L. Thompson, the drawer of said check, with which to pay the same, many of the items which had been theretofore deposited in said bank to the credit of said Thompson not having been collected and payment thereof to said bank not having been guaranteed and the defendant further alleges that on or about November 14th, 1928 and *prior* to the receipt by it of sufficient funds for the account of Thompson, the maker of said check, with which to pay the same, the said Thompson ordered and directed said defendant to stop and refuse payment of said check and that such stop payment order was never thereafter countermanded, and each of which allegations of the defendant are denied by the plaintiff.

"You are instructed that the law is in the matter of bank deposits that where a customer presents for deposit and there is deposited to his credit in a bank, checks or drafts, in the absence of an express agreement to the contrary the same will be accepted not as payment, but for collection only and the bank does not become liable to such depositor for the amount of such deposit until the same is collected nor is the bank bound to pay any checks drawn by said depositor against said deposit unless and until such deposits are collected.

"You are further instructed that it is the right of one who has issued a check against a deposit in a bank to direct the bank on which such check is drawn to refuse payment thereof and if such directions are received by such bank prior to the payment by the bank of such check, then it becomes the duty of and the bank is bound to respect the direction of the maker of such check and to refuse payment thereon to the payee thereof.

"You are instructed that it is the duty of a bank having accepted an item for collection to use due diligence in the collection thereof and due diligence in such cases means the payment of such items or item in the order of their presentment as soon as funds are available to pay the same and that failure to pay the same in the order of their presentment would constitute negligence on the part of the bank.

"You are instructed that if you find after this check was received by the bank and accepted for collection, if at any time thereafter and during the time the check was in this bank, there were sufficient funds to the credit of the drawer or maker of the check, E. L. Thompson, to have paid other checks, if any presented for payment prior to the time this was presented on November 14th, 1928 and this check, that you

will find for the plaintiff, unless you further find that prior to the receipt of sufficient amount of funds, if you so find, the maker of the check had stopped payment thereon.

"You are further instructed that under the evidence in this case there was no acceptance by the defendant bank of the check in question but that the same was merely left for collection and the title to such check remained at all times in the plaintiff Pankey.

"You are further instructed that before you can find the issues here in favor of the plaintiff and against the defendant, The First National Bank of Hot Springs, you must find from a preponderance of the evidence that the items which are shown on the E. L. Thompson bank statements introduced in this case as deposits to his credit in said bank had been collected by said bank or that the payment of such deposits, or the items making up such deposits had been guaranteed to said bank in sufficient amount to pay not only the check in evidence but other checks presented for payment prior to the leaving of this check with said bank for collection; and even if you do find that such deposits had been collected in sufficient amount to pay not only the Pankey check but other checks presented prior thereto, you must further find that such collections were received prior to the date when payment of the Pankey check was stopped by the maker thereof, if you find that such payment was ever stopped; and if you find that Thompson stopped payment on said check *prior* to

40 N.M.—18

the receipt by said bank of sufficient funds to cover the same, then your verdict must be for the defendant bank, unless you further find that such stop payment order was thereafter countermanded and that after such countermand the bank received sufficient funds to the credit of Thompson to pay said Pankey check and other checks having priority. * * *

"You are instructed gentlemen, that in this case the measure of damages is the admitted balance unpaid on the check of $10,370.00 together with lawful interest at six per cent. from that date, which you shall find that the check should have been paid, if you so find that it should have been paid, and there will be a blank left in the form of verdict where this sum mentioned and the date can be filled in by you."

Plaintiff alleged specifically that on December 4, 1928, Thompson, the drawer of the Pankey check, specifically instructed and directed said bank to pay said check out of a deposit of $48,000 made by said drawer on said date for the purpose of paying said check.

Upon the trial of the case the jury returned the following verdict: "We, the jury, find the issues for the plaintiff and assess his damages in the sum of $10,370.00, together with lawful interest from the 14th day of November, 1928."

Upon this verdict, the court entered judgment in favor of appellee and against appellant for said amount with interest as directed in the verdict. Motion for new trial was presented and overruled.

■ This is essentially a facts case. No legal exceptions were taken to the plaintiff's pleadings. No objections were made to the instructions of the court and these therefore, present the law of the case.

The point relied upon for reversal is thus stated in appellant's brief: "The trial court erred in overruling appellant's motion for a directed verdict, made at the close of appellee's case in chief, upon the ground that the appellee had not made out a case for damages because of negligence in the handling of appellee's check; and likewise erred in overruling the appellant's motion for a directed verdict, made at the close of all the evidence in the case, upon the same grounds as urged in the previous motion; and likewise erred in overruling appellant's motion for a new trial upon the same grounds as urged in the motions made during the course of the trial."

The writer is of the opinion that there is substantial evidence to support the view that the jury was warranted in finding the issue of whether there were funds of Thompson in the bank on November 14, 1928, out of which the Pankey check should have been paid, in favor of plaintiff, but he is alone in this, so we pass to a consideration of the situation presented on December 4, 1928. On that day, there was deposited to the credit of Thompson's checking account as a general deposit, the sum of $48,657.64. The jury was warranted in finding from the evidence that the Pankey check was in the possession of the bank on that day prior to and long after the deposit to Thompson's credit of the sum last

mentioned. Appellant does not contend to the contrary.

■ Matson testified that on December 4, 1928, when $48,657.64 had come in for the credit of Thompson's account, a lot of Thompson's checks were spread out before Thompson who was asked by Matson which checks he desired to have paid, and that Thompson gave directions to defer payment of the Pankey check, and designated other checks to be paid. Thompson, on the other hand, testified directly to the contrary, stating that he told Matson he wanted the Pankey check paid and gave as reason therefor, that he thought the older checks ought to be paid first. Thompson testified that Matson said the check was not in the bank and had been returned to Pankey.

To escape liability, the appellant bank alleged that Thompson did not have sufficient funds in the bank at the close of business on November 14, 1928, to pay the Pankey check. As a further defense, it alleged: "And for a further answer, and by way of new matter, this defendant alleges that on or about November 15, 1928, and prior to the receipt by it of sufficient funds for the account of said Thompson with which to pay off and discharge said check of said plaintiff, the said Thompson ordered and directed this defendant to stop and refuse payment on said check of said bank, and that said stop payment order was never thereafter countermanded."

This expression, "on or about November 15, 1928," even construed liberally in

appellant's favor, would hardly cover circumstances occurring as late as December 4, 1928. From the evidence, it is plain that the pleader referred to an alleged telephone conversation which the bank's cashier, Mr. Matson, claimed he had with Thompson about two or three days after November 14, 1928, when the check was accepted for collection. This alleged telephone conversation, in which Matson claims Thompson told him to stop payment on the Pankey check, was positively denied by Thompson, the drawer of the check. In the face of the instructions of the court, the verdict of the jury evinces a belief by the jury in the testimony of Thompson. As we have seen from the court's instructions heretofore quoted, the court submitted the issue apparently made by the pleadings, of whether Thompson had stopped payment of the Pankey check "on or about November 15, 1928 and prior to the receipt by it (the bank) of sufficient funds for the account of Thompson, the maker of the check, with which to pay the same."

The jury found this issue against the appellant. Counsel for appellant now suggest for the first time, so far as we can discover from the record, that the situation reflected in the testimony of Mr. Matson, the cashier of the bank, to the effect that on December 4, 1928, Thompson designated checks other than the Pankey check to be paid and with respect to payment of the Pankey check "to defer it," "operated as a revocation of the order of payment, or a stop payment."

There is a grave doubt whether any such issue was made by the pleadings or ever submitted by the court. The foregoing quotation from the answer of defendant refers to an alleged stop payment "*prior* to the receipt by it of sufficient funds for the account of said Thompson with which to pay off and discharge said check of 'said plaintiff," thus excluding any reference to circumstances amounting to a stop payment occurring *after* receipt by the bank of sufficient funds for the account of Thompson out of which the bank could have paid the Pankey check. If such an issue was in the case, and if the instructions of the court submitted an issue of whether Thompson stopped payment of the Pankey check on December 4th, the jury found such issue against defendant upon substantial evidence. We may further observe that if such issue had been framed and submitted or been considered within the issues as submitted, and the jury had found that the circumstances involved in the conversation between Matson, the bank's cashier, and Thompson, the drawer of the check, on December 4th, after or at the time the $48,000 was credited to Thompson's account, with respect to designation by Thompson of checks other than the Pankey check for payment, and instruction to "defer" payment of the Pankey check, viewed in the light most favorable to the bank, as related by its cashier, we would be disposed to hold as a matter of law that such circumstances did not amount to a *stop payment* by Thompson. We do

not understand appellant to seriously urge these circumstances as constituting a stop payment.

"Countermand is really a matter of fact. It means much more than a change of purpose on the part of the customer. It means, in addition, the notification of that change of purpose to the bank. There is no such thing as a constructive countermand in a commercial transaction of this kind." 5 R. C.L. Checks § 49.

"Notice to a bank to stop payment of a check ·must be positive and unqualified." Shude v. American State Bank, 263 Mich. 519, 248 N.W. 886, 88 A.L.R. 736.

Thompson, the drawer of the check, testified that he did not ever stop payment of the Pankey check but to the contrary instructed the bank on December 4, 1928, to pay it. What they really urge, as we understand it, is that the circumstances, as detailed by the witness on behalf of the bank, amounted to a direction by Thompson, the drawer of the Pankey and many other checks then in possession of the bank, to displace priority of payment as between checks, such priority having arisen through order of presentation thereof to the bank for· payment.

As heretofore seen, the court properly instructed the jury that it is the right of one who has issued a check against a deposit in the bank to direct the bank on which such check is drawn to refuse payment thereof, and if such directions are received by such bank prior to the payment by the bank of such check, then it becomes the duty of and the bank is bound to respect the direction of the maker of such check and to refuse payment thereon to the payee thereof. But this is quite a different thing from asserting that a drawer of checks upon his funds in bank has a right after such checks have been presented to the bank for payment to displace priorities created by order of presentment of such checks to the bank. If appellant has presented such a proposition, it has cited no authority in support thereof, and we know of none.

▮ From all of the foregoing, it appears that the jury's decision of the issues in favor of the plaintiff is sustained by substantial evidence, and the judgment is in the main correct. It appears, however, that the jury erroneously allowed interest from the 14th day of November, 1928, whereas it should have allowed interest on the damages found from the 4th day of December, 1928. Our decision is that if, within 30 days the appellee shall file with the clerk of this court .a remittitur of an· amount equivalent to 6 per cent. per annum on $10,370 from November 14, 1928, to December 4, 1928, the judgment shall be and is hereby thereupon affirmed and the cause remanded. Otherwise, said judgment will be reversed and the cause remanded for a new trial, and it is so ordered.

SADLER, C. J., and BRICE, J., concur.

HUDSPETH, Justice (dissenting).

This case well may be called a sequel to State v. Thompson, 37 N.M. 229, 20 P.(2d)

1030. The defendant in the criminal case appeared as the star witness of the plaintiff, and, on his bank statement showing a credit balance of $26,578.06 on the 14th day of November, 1928, resulting from the deposit of bogus drafts by Thompson, plaintiff's learned counsel, again relying upon this false book credit, asked for and obtained a verdict for the balance due on a check for $21,370, and interest thereon from November 14th, notwithstanding that after the check was presented on November 14th and before December 4th Thompson had made a payment thereon of at least $11,000, more than plaintiff's fair share of this insolvent's assets.

Mr. Justice BICKLEY'S consistent position is not concurred in by the other members of the majority, who, as I understand the decision of the court, based their judgment upon the theory that the defendant bank is liable because it paid out the $48,000 received December 4th, pursuant to the verbal orders of Thompson; an admitted fact. See Pierson v. Union B. & T. Co., 181 Ky. 749, 205 S.W. 906, 2 A.L.R. 172, as to payment by banks on verbal order.

Since the case turns upon the receipt and disbursement of the deposit received December 4th, a more detailed statement of facts relative thereto seems justified. Thompson had drawn drafts on the McFee Commission Company for about double the amount of the remittance of December 4th, all of which drafts had been dishonored. Thompson testified that this money received December 4th was "wired in," and the testimony of the cashier of the bank is as follows:

"Q. According to this Exhibit B on December 4th, 1928 you credited Thompson's account in your bank with a deposit of $48,657.54. You recall that transaction? A. Yes sir.

"Q. Do you know where that money come from? A. Yes sir.

"Q. Where? A. That was deposited by the McFee Commission Company for the credit of the First National Bank of Hot Springs to a bank in Saint Joseph, Missouri.

"Q. And the credit was made by wire? A. That is to say—I received a telegram from the bank in Saint Joseph, Missouri that the McFee Commission Company had deposited this amount of money with them for the credit of the First National Bank of Hot Springs for the use of E. L. Thompson. This amount represented the final settlement of cattle shipments made by Thompson to the McFee Commission Company.

"Q. If you recall, state what amount of checks there was in your bank at that time, December 4th, drawn by Thompson against his account in your bank that had not been paid? A. When we received this notice by wire I took all the checks that were in the First National Bank of Hot Springs for collection and added them on the adding machine and they totaled over $160,000.00. These checks were taken in the back room and Mr. Thompson desig-

nated what checks to be paid and charged against this balance."

Under this state of facts, treating this money as in the hands of the defendant bank, it was a specific deposit tendered by the McFee Commission Company in settlement, and, until accepted by Thompson, remained their property. The Trustees of Howard College v. Pace, 15 Ga. 486; Mayer & Lowenstein v. Chattahoochee National Bank, 51 Ga. 325; Hill v. Arnold & Co., 116 Ga. 45, 42 S.E. 475; Brockmeyer v. Washington National Bank, 40 Kan. 376, 744, 19 P. 855; McGorray v. Stockton Savings & Loan Soc., 131 Cal. 321, 63 P. 479; Patek v. Patek, 166 Mich. 443, 131 N.W. 1103; Id., 166 Mich. 446, 131 N.W. 1101, 35 L.R.A.(N.S.) 461 and note; Borough of Deal v. Asbury Park & Ocean Grove Bank, 118 N.J.Eq. 297, 178 A. 790; Keyes v. Paducah & I. R. Co. (C. C.A.) 61 F.(2d) 611, 86 A.L.R. 203; Appeal of Reicheldifer, 115 Pa.Super. 454, 176 A. 52; Dustin & Musick v. Hodgen, 38 Ill. 352; Leech v. First National Bank, 99 Mo. App. 681, 74 S.W. 416; Moreland v. Brown (C.C.A.) 86 F. 257; Mester v. Quincy National Bank, 163 Ill.App. 645; 7 C.J. 631; Sindlinger v. Department of Financial Institutions (Ind.Sup.) 199 N.E. 715; State ex rel. Good, Atty. Gen., v. Platte Valley State Bank of Scottsbluff (Neb.) 264 N. W. 421.

In the case of Brockmeyer v. Washington National Bank, supra, the syllabus is as follows: "Where a savings bank delivers to a national bank money, drafts, notes, securities, etc., to pay a creditor, the relation between the debtor bank and the national bank is that of principal and agent, until the creditor assents or acts upon the transaction; and the assent of the creditor will not be presumed when he has no notice or knowledge of it."

The text-writers seem to be in accord with the above statement: " * * * The deposit was made for a specific purpose and before the person in whose name it stood could treat the credit created by it as absolutely his own, it was necessary that he should accept it as made." 5 Michie on Banks & Banking, c. 9, § 86, p. 179.

"Specific Deposit.—When money is deposited to pay a specified check drawn or to be drawn, or for any purpose other than mere safe-keeping, or entry on general account, it is a specific deposit, and the title remains in the depositor until the bank pays the person for whom it is intended, or promises to pay it to him." 1 Morse on Banks & Banking (6th Ed.) c. 13, § 185.

Nor can the bank receiving the deposit change its character by wrongfully placing it to the credit of the depositor in his general checking account. In re North Missouri Trust Co. of Mexico, Mo. (Mo.App.) 39 S.W.(2d) 412; Spicer v. Round Prairie Bank, 228 Mo.App. 525, 71 S.W.(2d) 121; Central Coal & Coke Co. v. State Bank of Bevier, 226 Mo.App. 594, 44 S.W.(2d) 188, 190.

In this last case the following appears: "Also in Ellington v. Cantley (Mo.App.) 300 S.W. 529, 531, it is said: 'If the facts

and circumstances surrounding the making of a deposit show such deposit to be special, the bank receiving the deposit could not change its character by wrongfully placing it to the credit of the depositor in his general checking account.' "

It is evident that the defendant bank had no right to place this money in Thompson's general account, and that no right was conferred upon plaintiff by the unauthorized act of the defendant bank. In the case of Kimmel v. Dickson, 5 S.D. 221, 58 N.W. 561, 562, 25 L.R.A. 309, 49 Am.St.Rep. 869, the court said: "We apprehend that no different principle is involved because one of the parties happens to be a bank. * * * That he, or the bank in this case, had, without the consent of Kimmel, diverted the money and used it for some other purpose, ought not to affect Kimmel's rights. Abuse of a trust can confer no rights on the party abusing it, or on those claiming in privity with him."

Under the instructions of the court it was necessary for the plaintiff to prove that funds were available to pay the check. Lest it be inferred that Thompson left funds with the defendant bank out of the $48,000 received December 4th, which under all the authorities was at his disposal, with which to pay the plaintiff's check, I trust I may be pardoned if, in the interest of clarity, I again quote from the record. Thompson testified: "Q. Why didn't you go to Mr. Pankey if Mr. Matson told you that Mr. Pankey had this check, if you wanted Mr. Pankey's check paid, and tell him to put this check in there and put it in quick? A. Well, there was enough checks in there to be paid without me running anybody down to get to pay one and if he had it with him I couldn't see where I should chase him over the country to find him because that $48,000.00 was there and there was other checks sufficient to take that up and I didn't consider that Mr. Matson could hold that open as this check was gone and the other checks there for collection. I don't think it was possible for him to hold it while I chased around hunting for somebody."

The defendant bank in taking plaintiff's check for collection was acting without consideration, other than the accommodation of a customer. If it had disposed of the deposit received December 4th as plaintiff claims it should have done, without notifying and consulting Thompson as to his wishes, it would have been a betrayal of a trust. To be mulcted in damages because it did not betray a trust is a judicial outrage.

I dissent.

ZINN, Justice (dissenting).

To my mind it is clear that Thompson, the depositor, varied the order of payment of his checks. This I believe he has a clear right to do. This right is clearly a lesser right within the greater right that the drawer has at any time before actual payment of the check by the drawee bank to revoke or countermand the payment be-

fore presentation and demand for payment.

A check is merely an order given by the principal upon his agent. 5 R.C.L. 527. It is always open to the principal to countermand an order to its agent before it is executed. This is exactly what Thompson did. Upon being informed that the Pankey check was not among the checks present, he ordered his agent, the bank, to pay the other checks. This the bank did. To permit judgment against the bank is to inform every banking institution in New Mexico to accept checks for collection at their peril. I cannot give my consent to such a rule or practice.

I dissent.