EUGENE GOODWILLIE AND HARPER HOLT, COMPLAIN-ANTS-RESPONDENTS, v. CITY OF BAYONNE, DEFEND-ANT-APPELLANT.

Argued March 14, 1949—Decided April 25, 1949.

*Mr. William Rubin* argued the cause for the appellant.

*Mr. Thomas H. Brown* argued the cause for the respondents.

The opinion of the court was delivered by

WACHENFELD, J. Appeal is taken from a decree directing the City of Bayonne to pay the respondents Eugene W. Goodwillie the sum of $5,000 and Harper Holt $3,084.70, with interest from November 15, 1939, on assigned claims.

In February, 1937, the appellant entered into a written agreement with The Central District, Inc., a New Jersey corporation, concerning a ship-to-rail industrial terminal to be constructed by the city and financed through a United States PWA outright grant of $1,785,000 and a municipal

bond issue for $2,430,000. Under the agreement the corporation undertook to convey certain of its land to the city and to assume whatever costs were incurred to perfect title through condemnation proceedings. Central District further agreed to supervise the construction of the project and to provide "such engineering, administrative and legal services as may be necessary" in connection with the work, all to be done under the supervision of the PWA and subject to and in conformance with its rules and regulations. Upon completion of the terminal, Central District agreed to operate the project under a fifty-year lease.

The city in return agreed to devote all moneys received from the grant and bond issue to the construction of the terminal and to deposit them in a special "Construction Account" and to pay therefrom all the legal and engineering services, administrative and overhead expenses incurred by the company.

The terminal was constructed and in the course thereof Central District furnished legal, engineering and other preliminary services and took possession under the lease in the early part of 1939. On November 15, 1939, it assigned the claim for legal services to the law firm rendering them and the firm in turn re-assigned it to Goodwillie; on the same date the company assigned the claim for preliminary overhead and administrative expenses to Holt. Notice of the assignments was given to the city the following day. At the time, funds in the construction account apportioned under agreement with PWA, the city and Central District provided $6,396.45 for legal services and $104.81 for preliminary expenses and overhead, although subsequently on May 22, 1940, the city received from PWA $12,040.42 additionally for the latter.

On January 1, 1940, Central District defaulted in its rental payments because of the bankruptcy of the Central Railroad of New Jersey and the latter's inability to purchase bonds of the corporation, the proceeds of which were to be used to pay the rental. The city evicted the lessee and shortly thereafter the United States Government took over the ter-

.minal by condemnation, paying $5,350,000, resulting in a substantial profit to the city.

The city thereupon appropriated all unpaid balances in the construction account toward the unpaid rent and refused to pay on the assignments, setting up three separate claims.

The first arose from a separate contract between the corporation and the city providing for reimbursement by it to the city for amounts expended in the construction of a railroad crossing which would give access to the terminal. The work was completed by January, 1939, eleven months before the assignment, and the indebtedness in that regard amounted to $1,325.89.

The second claim by the city concerns condemnation proceedings to clear defective title in the land provided by Central District. Two property owners claimed paramount title and instituted suit and a decree was entered in their favor in August and October, 1939, which was prior to the assignments herein concerned. The decree included counsel fees and costs totaling $4,944.78. Condemnation proceedings were then instituted by the city, resulting in an award in 1941 of $45,344.49. This sum, under the lease, became due to the city.

The third claim by the city against Central District is the default in rental payments which occurred for the first time on January 1, 1940, subsequent to the date of assignment and totaling $148,793.

The Vice-Chancellor concluded that the funds in the construction account for legal services and preliminary expenses were earmarked and held in trust by the city; that at the time of the assignment there were no equities or set-offs existing; and that the city, having received the benefit of the legal services rendered and the advances for preliminary expenses, could not thereafter appropriate to its own use funds received from the federal government for the payment of the claims.

The conclusion in regard to the existing equities at the time of the assignment is not in accord with the record. The sum claimed by the city for the cost of erecting the railroad

crossing was fully determined prior to the date of assignment, as was the decree establishing the claim of the property owners. The third set-off claim by the city concerning default in rental payments did not occur until after. the assignments. Despite this misconception of the facts, the result reached by the court below is sustained for the reasons hereafter, stated.

█ The contract under which the federal funds became available provided that the grant, as well as the proceeds of the city's own bond issue, was required to be placed in a special "Construction Account" to be used solely for the construction of the terminal. These funds were received and set aside by the city for specific purposes. When accepted by the city, they became earmarked and impressed with a trust obligating the city to expend them for the designated uses. *Hoboken v. Ivison,* 29 *N. J. L.* 65 (*Sup. Ct.* 1860); *Maurello v. Broadway Bank & Trust Co.,* 114 *N. J. L.* 167 (*E. & A.* 1935); *Deal v. Asbury Park and Ocean Grove Bank,* 118 *N. J. Eq.* 297 (*E. & A.* 1935); *Hopper v. New Jersey Title Guarantee & Trust Co.,* 127 *N. J. Eq.* 1 (*E. & A.* 1940).

██ A defendant may not set off a claim unless it arose between the parties in the same capacity as they are designated in the main action. Accordingly, a fiduciary cannot assert a personal claim against a beneficiary who seeks payment from the fiduciary of funds held in his behalf. 47 *Am. Jur., Setoff and Counterclaim,* §§ 48 and 51; *Piscataway Township v. First National Bank of Dunellen,* 111 *N. J. L.* 412, 416 (*E. & A.* 1933). Nor may a trustee withhold trust payments from a *cestui* to obtain payment of a personal debt which he may have against the beneficiary. 2 *Scott, Trusts* (1939), § 250; 4 *Bogert, Trusts and Trustees* (1935), § 812; *Restatement, Trusts,* § 250.

The argument contending specific claims of the respondents were unenforceable without approval of the PWA is not supported by the terms of the agreement. The work and specifications were in full accordance with the prescribed regulations and the city at the direction of the PWA apportioned the funds in the construction account to specifically cover these claims.

The deposits so made and subsequent additions thereto became impressed with the obligation to be disbursed only as agreed upon. The city, having failed to establish any equitable basis for not making the payments according to the designated purposes, must comply with the order entered below.

Judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—None.