Emma Wauer, Respondent, v. Bank of Pendleton, in charge of S. L. Cantley, Commissioner of Finance of the State of Missouri, Appellant.—65 S. W. (2d) 167.

St. Louis Court of Appeals. Opinion filed December 5, 1933.

*Geo. C. Dyer* and *Glover E. Dowell* for plaintiff.

1152

*W. B. Whitlow* and *Emil Roehrig* for appellants.

SUTTON, C.—This is an action in equity to establish a preferred claim against the Bank of Pendleton, an insolvent corporation, in charge of S. L. Cantley, Commissioner of Finance, for liquidation. The action was brought to the January term, 1932, the petition being filed on October 5, 1931.

The action as originally brought was styled "Emma Wauer, Plaintiff, v. Bank of Pendleton, a corporation, and S. L. Cantley, Commissioner of Finance of the State of Missouri, in charge of the property and affairs of said Bank of Pendleton, for liquidation, defendants."

No summons was ever issued in the case. However, following the filing of the petition, on December 24, 1931, the defendants caused notice to take depositions in the cause to be served upon the plaintiff's attorneys, and pursuant to such notice depositions were taken at the office of the clerk of the Circuit Court of Warren County, on December 30, 1931, all the parties appearing by their attorneys at the taking such depositions. Afterwards, on December 30, 1931, defendant Bank of Pendleton filed its plea in abatement, stating as grounds for the abatement of the cause that no summons had ever been issued against the Bank of Pendleton and the bank had never entered its appearance. On January 8th, during the January term, 1932, defendant S. L. Cantley, as Commissioner of Finance of the State of Missouri, filed his answer, consisting of a general denial. On January 15, 1932, the plea in abatement of defendant Bank of Pendleton was sustained, and the cause was dismissed as to said defendant.

On January 25, 1932, the plaintiff, with leave of court, filed her amended petition, which was styled as follows: "Emma Wauer, Plaintiff, v. S. L. Cantley, Commissioner of Finance of the State of Missouri, in charge of the property and affairs of the Bank of Pendleton, Pendleton, Missouri, for liquidation, defendant." The amended petition is otherwise substantially the same as the original petition. It alleges that the Bank of Pendleton is a banking corporation organized and existing under the laws of the State of Missouri, and as such banking corporation was engaged in the general banking business at Pendleton, in Warren County, Missouri, until December 15, 1930, when it was placed in the hands of S. L. Cantley, Commissioner of Finance of the State of Missouri, for liquidation, and that ever since December 15, 1930, the said S. L. Cantley, as such Com-

1154

missioner of Finance, has been and now is in charge of the property and business of said Bank of Pendleton, and in such capacity is liable to be sued on all lawful claims against said bank; that on November 29, 1927, plaintiff received one United States Treasury check for $1,000, and on December 14, 1928, received one United States Treasury check for $3,000; that she endorsed said checks and delivered them to Otto F. Haake, cashier of the Bank of Pendleton, at its banking house at Pendleton, in Warren County, Missouri; that upon the delivery of said checks to said bank said cashier agreed to cash said checks for plaintiff and purchase for her United States Government Bonds for the said sum of $4,000; that plaintiff has never received said United States Governments Bonds, and has not received the said sum of $4,000, or any part thereof, from said Bank of Pendleton, although the said Bank of Pendleton caused such checks to be cashed and received the money therefor, and has withheld the same from plaintiff, and has wrongfully and unlawfully converted said sum of $4,000 of the moneys belonging to plaintiff to its own use and benefit; that on or about June 10, 1927, plaintiff paid to said Bank of Pendleton the sum of $500 for the purpose of having said bank purchase for her a United States Government Bond of the denomination of $500; that said Bank of Pendleton received the said sum of $500 from plaintiff, and it was agreed by said bank with plaintiff that it would purchase said bond for her for the amount so paid; that said United States Government Bond was never delivered to plaintiff, and plaintiff has not received from said Bank of Pendleton the $500 so paid to said bank for the purchase of said bond, and no part thereof, but that said Bank of Pendleton has wrongfully and unlawfully converted to its own use and benefit the said sum of $500 of the moneys belonging to plaintiff; that in September, 1928, plaintiff delivered said Bank of Pendleton one United States Government Bond of the denomination of $1,000 for redemption by the United States Government; that said bond was endorsed by plaintiff and delivered to the Bank of Pendleton; that on or about September 20, 1928, plaintiff through said Bank of Pendleton received a check in payment for said bond; that plaintiff endorsed said check and delivered it to the cashier of the Bank of Pendleton with directions to said bank to invest the same in a United States Government Bond and said cashier acting for said bank agreed to cash said check and purchase for plaintiff a United States Government Bond for the amount of said check; that said check was cashed by said Bank of Pendleton, and it received the money therefor; that plaintiff has never received any government bonds or bond, and has not received back from said Bank of Pendleton the money so paid by her to said bank, or any part thereof, but that said Bank of Pendleton has wrongfully and unlawfully converted the same to its own use and benefit; that in each and every one

of the instances above stated the funds so received by the Bank of Pendleton from plaintiff constituted and were special deposits, and said funds were held in trust by said Bank of Pendleton as trustee for the sole use and benefit of plaintiff; that upon receipt of said funds by said Bank of Pendleton, as aforesaid, under the agreements made between said Bank of Pendleton and plaintiff, as stated herein, it was the duty of said Bank of Pendleton to purchase said Bonds and to deliver them to plaintiff, but that said Bank of Pendleton, in direct violation of its agreement, obligation, and duty, placed said funds among its assets, and the same came to the hands of the Commissioner of Finance of the State of Missouri when he came to take charge of said Bank of Pendleton, and that at law and in equity said funds became impressed with a trust in the hands of said defendant Commissioner of Finance, for the use and benefit of plaintiff, and plaintiff is entitled to payment of said funds out of the assets of said Bank of Pendleton prior to the payment of the claims of general creditors.

On February 15, 1932, defendant Cantley filed his motion to strike the amended petition from the files, stating as grounds therefor that the amended petition is a substitution of a different cause of action against a different defendant from that contained in the original petition. On the same day the motion to strike the amended petition from the files was overruled. On February 17, 1932, defendant Cantley filed his demurrer to the amended petition, stating, as grounds therefor, that upon the face of the petition it appears that there is a defect of parties defendant; that it appears upon the face of the amended petition that the court in this case has no jurisdiction of the person of the defendant, or of the subject-matter of the action; and that upon the face of the amended petition it appears that the same does not state facts sufficient to constitute a cause of action either at law or in equity. On February 18, 1932, the demurrer of defendant Cantley to the amended petition was overruled. Thereupon, said defendant filed his answer to the amended petition. The answer denies generally the allegations of the amended petition, and as a further defense alleges laches on the part of the plaintiff in delaying for an unreasonable time to withdraw or demand her money from the Bank of Pendleton after she knew, or ought to have known, the bonds mentioned in her amended petition had not been purchased. Plaintiff's reply to defendant's answer is a general denial.

The cause went to trial on February 18, 1932, and at the conclusion of the evidence it was taken under advisement.

On April 18, 1932, plaintiff, with leave of court, amended her amended petition, by interlineation, by changing the style of the case as appearing in the caption of the petition to read as follows: "Emma Wauer, Plaintiff, v. Bank of Pendleton, in charge of S. L. Cantley, Commissioner of Finance of the State of Missouri, defendant." There

upon, the court gave judgment in favor of plaintiff against the defendant, allowing plaintiff a preferred claim in the sum of $4,500, and a general claim in the sum of $1,000, from which judgment defendant has appealed to this court.

It has been rather puzzling to discern the contentions of the finance commissioner respecting questions of procedure raised by him on this appeal. We observe that in his statement of the facts he says the court dismissed the cause as to the Bank of Pendleton on its plea in abatement, and that said Bank of Pendleton is not therefore a party to the amended petition filed by plaintiff on January 25, 1932, except that after the case had been tried and taken under advisement, the court on April 18, 1932, permitted plaintiff to amend her petition by changing the name of the defendant to Bank of Pendleton, in charge of S. L. Cantley, Commissioner of Finance of the State of Missouri, though no service had ever been had on said Bank of Pendleton.

Under his points and authorities the commissioner says: (1) That his motion to strike the amended petition from the files should have been sustained for the reason that it is a substitution of a cause of action and not an amended petition, and for the further reason that in the original petition the Bank of Pendleton is the defendant and in the amended petition the Commissioner of Finance is the defendant; and (2) that his demurrer should have been sustained for the reason that it shows on its face that there is a defect of parties defendant, and that the court had no jurisdiction of the person of the defendant, or the subject-matter of the action.

In his argument the commissioner says that this case plainly shows that there is a defect of parties defendant, and that suit was not brought against the proper parties, and that when the court sustained the plea in abatement as to defendant Bank of Pendleton, it could not later without service of process make the Bank of Pendleton a party defendant.

Section 5332, Revised Statutes 1929 (Mo. Stat. Annot., sec. 5332, p. 7556), provides as follows:

"For the purpose of executing any of the powers and performing any of the duties hereby conferred upon him, the commissioner may, in the name of the delinquent corporation of private banker, prosecute and defend any and all actions and legal proceedings."

Section 5337, Revised Statutes 1929, Mo. Stat. Annot., sec. 5337, p. 7560, provides as follows:

"When the time within which the commissioner is required to approve or reject claims has expired and at any time within six months thereafter, a claimant whose claim has been duly filed and has not been approved by the commissioner may institute and maintain an action thereon against such corporation or banker. No action shall be maintained against such corporation or banker while

the commissioner is in possession of its affairs and business unless brought within the period of limitation specified in this action.''

It appears that in the original petition filed in this cause the Bank of Pendleton was made a party defendant in its own individual capacity, and S. L. Cantley was made a party defendant in his representative capacity as Commissioner of Finance in charge of said bank. When the cause was dismissed as to the Bank of Pendleton on its plea in abatement, said Bank of Pendleton went out of the case as a defendant in its own individual capacity, as it ought. for, being an insolvent corporation in charge of the finance commissioner for liquidation, it was without power or capacity to sue or be sued, prosecute or defend, or otherwise function, except through the finance commissioner, but, when, by dismissal on its plea in abatement, it went out of court as a party defendant in its individual capacity, it remained in court as a party defendant through the finance commissioner in his representative capacity. So that the change made in the name of the defendant by the amendment of the style of the case just prior to the entry of the judgment was unsubstantial, and a mere matter of form. There was no change as to the real party defendant, and it was immaterial whether such party was denominated as the Commissioner of Finance, in charge of the Bank of Pendleton, or as the Bank of Pendleton, in charge of the Commissioner of Finance.

The suggestion that defendant's motion to strike the amended petition from the files should have been sustained, for the reason that it is a substitution of a new cause of action, has no merit so far as we are able to discern. Defendant has not seen fit to point out the grounds on which he bases this suggestion. The allegations of the amended petition sought to be stricken from the files are substantially the same as the allegations of the original petition, except that in the amended petition S. L. Cantley, Commissioner of Finance, in charge of the Bank of Pendleton, is treated as the sole defendant, whereas in the original petition the Bank of Pendleton in its individual capacity, as well as the Commissioner of Finance, is treated as a party defendant.

The suggestion that in the original petition the Bank of Pendleton is the defendant, whereas in the amended petition the Commissioner of Finance is the defendant is likewise without merit, for the obvious reason, as already shown, that in the amended petition the Commissioner of Finance remained a defendant in his representative capacity just as in the original petition.

On what ground or grounds defendant bases the suggestion that the court had no jurisdiction of the person of the defendant, or the subject-matter of the action, we are not advised. The record shows that the defendant gave notice to take depositions, and appeared and took depositions, in the cause, afterwards appeared and filed an

answer to the original petition, filed a demurrer to the amended petition, filed an answer to the amended petition, and finally participated in the trial and submitted the cause on its merits to the court for its decision. Clearly, the court was fully possessed of jurisdiction of both the person of the defendant and the subject-matter of the action.

The suggestion that the case shows that there is a defect of parties defendant is without substance. The Bank of Pendleton in its individual capacity was neither a necessary nor a proper party. It could become a proper party defendant only by representation through the finance commissioner. In such fashion it has been a party defendant in the case, and defending the same, from its inception.

On the merits of the case, defendant assigns error here for the allowance by the court below of the sum of $4,500 to plaintiff as a preference claim. No question is raised with respect to the allowance of the sum of $1,000 as a general claim.

The Bank of Pendleton having become insolvent was placed in the hands of the Commissioner of Finance on December 15, 1930. It is admitted that the assets of the bank turned over to the Commissioner of Finance were in excess of the amount of plaintiff's demand.

The evidence shows that plaintiff owned four United States Treasury Certificates and a Liberty Bond, each of the denomination of $1,000. She also held two time deposit certificates issued to her by the Bank of Pendleton, amounting in the aggregate to $505.20, including interest. In June, 1927, plaintiff delivered to Otto F. Haake, cashier of the bank, her time deposit certificates, and requested him to purchase for her with the proceeds of the certificates a United States Government Bond of the denomination of $500. This the cashier agreed to do, and thereupon delivered to plaintiff a deposit slip showing the amounts of the time deposit certificates with accrued interest aggregating $505.20, and deducting therefrom "for bond $500," leaving a balance of $5.20 to plaintiff's credit. The cashier afterwards told plaintiff that he had the bond there in the bank for her. One of plaintiff's treasury certificates for $1,000 came due in December, 1927. She delivered this certificate to the cashier of the bank, and asked him to buy her a bond, and he told her that he would. He afterwards told her that he had purchased the bonds for her, and that it was there in the bank. Plaintiff's three other treasury certificates, aggregating $3,000 fell due in December, 1928. She went to the bank and signed the certificates and delivered them to the cashier for redemption. He sent them in for her and the government checks for the bonds came to the bank made payable to the plaintiff. She endorsed the checks to the bank and told the cashier to buy bonds for her with the proceeds of the checks. The cashier told her he would buy the

bonds for her. About a week afterwards plaintiff was in the bank again, and the cashier told her that he had purchased the bonds for her and he had them there in the bank. In September, 1928, plaintiff delivered to the cashier her $1,000 liberty bond for redemption, and asked him to purchase for her with the proceeds of this bond another government bond. The cashier sent the liberty bond in for redemption, and a check for its redemption came back to the bank made payable to the plaintiff. Plaintiff endorsed the check, and asked the cashier to buy a government bond for her with it, and he told her that he would. He afterwards told her that he had purchased the bond for her and had it in the bank. He always assured her that he had purchased the bonds as directed and was keeping them for her there in the bank. She never knew that the bonds had not been purchased for her according to her directions until after the bank was closed and placed in charge of the finance commissioner. She had a general account at the bank, but none of the funds involved here were deposited to the credit of her general account. She received no deposit slips for the funds. Nevertheless, the funds were used by the bank, and were never repaid to the plaintiff, nor any part thereof, and no bonds or other securities were ever purchased for her with said funds.

The cashier testified that the funds received for plaintiff's four treasury certificates were deposited in the National Stock Yards Bank to the credit of the Bank of Pendleton, and were used by said Bank of Pendleton for its own purposes; that the sum of $500 left with the bank by plaintiff from the proceeds of her time certificates of deposit was used for the bank or in the bank; and that the sum of $1,000 left with the bank by plaintiff as the proceeds of her liberty bond was used by the bank. He further testified that on each of the occasions when plaintiff left funds with the bank she gave him specific instructions that the funds were to be used for the purchase of a government bond or bonds, and that was the way the funds were accepted, and that all these transactions plaintiff had with him were transactions with him on behalf of the bank. He also testified that no bonds were ever purchased for plaintiff, and that she was never repaid the funds, or any part thereof, which the bank received from her for the purpose of purchasing bonds.

The evidence makes out a very clear case for the establishment of a trust. The funds which the bank got from the plaintiff were received and accepted for the purpose of purchasing United States bonds or treasury certificates. This was according to the express agreement between the plaintiff and the cashier of the bank. In accepting the funds for the purpose of purchasing these securities, the bank became the agent of the plaintiff, to apply the funds in accordance with that purpose. Thus, a trust relationship arose between the parties, which is the basic essential for the establishment of a

trust with respect to such funds. There is no question that the bank received the funds, and instead of using the funds in discharge of the trust imposed, appropriated them to its own use and commingled them with its own assets. On receipt of the funds by the bank, they did not become general deposits, but constituted special deposits, to be employed in the purchase of securities as agreed upon by the parties when the funds were received. The title to the funds did not pass to the bank, but the bank held the same in trust for plaintiff to be invested in government securities. [Greenfield v. Clarence Savings Bank (Mo. App.), 5 S. W. (2d) 708; Evans v. People's Bank of Meadville (Mo. App.), 6 S. W. (2d) 655; Ozark Fruit Growers' Ass'n v. Bank of Aurora (Mo. App.), 52 S. W. (2d) 430; Central Coal & Coke Co. v. State of Bevier (Mo. App.), 44 S. W. (2d) 188; Marshall v. Farmers' & Merchants' Bank (Mo. App.), 253 S. W. 15; Missouri Mutual Ass'n v. Holland Banking Co. (Mo. App.), 290 S. W. 100.]

We are not in agreement with defendant's contention that the relief here sought is barred by laches. Ordinarily, lapse of time alone does not constitute laches, but some change in the circumstances, rendering it inequitable to grant relief, is essential. And, whether or not relief is to be barred for laches must depend upon the particular circumstances of each case. We are unable to see how the bank in this case could have been in any way prejudiced by having the use of the plaintiff's funds for several years before the bank was closed for liquidation; nor can we see how the general depositors or creditors were prejudiced thereby. The effect of the judgment awarding to plaintiff, out of the assets of the bank, the funds received from her by the bank in trust for the specific purpose of purchasing bonds, leaves the bank and the general depositors and creditors in the same situation they would have been in if the bonds had been purchased by the bank in accordance with the trust imposed, or if the funds had never been received by the bank at all, or had been withdrawn immediately after they were received. Nor do we think the plaintiff must be charged with negligence for having failed to discover, until after the closing of the bank, that her funds had not been invested in bonds as directed. She evidently imposed implicit confidence in the bank's cashier. She had no reason at that time to distrust him. His position as cashier of the bank was in itself such as to easily enable him to gain and hold her confidence. He assured her that he had purchased the bonds as directed, and was keeping them for her in the bank. She had no reason at that time, so far as the evidence shows, to disbelieve him.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of Sutton, C., is adopted as the opinion of the court.

The judgnemt of the circuit court is accordingly affirmed. *Becker, P. J.,* and *Kane* and *McCullen, JJ.,* concur.