Julia UPSHAW, Plaintiff-Appellant,

v.

Betty Jean LATHAM, Administratrix of the
Estate of Constance A. Johnson, De-
ceased, Defendant-Respondent.

No. 34474.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Oct. 24, 1972.

Champ C. Stonebraker, St. Louis, for plaintiff-appellant.

Arthur Kreisman, St. Louis, for defendant-respondent.

DOWD, Chief Judge.

Appellant Julia Upshaw filed a demand for $750.00 in the Probate Court against the estate of Constance Johnson, appellant's downstairs neighbor, who died intestate on June 8, 1969. Appellant's claim was denied by the Probate Court. The Circuit Court affirmed the decision.

Appellant sets forth three arguments on appeal to this court.

1. The evidence showed that appellant had rendered services to the deceased, was not compensated therefor, and was not related to deceased.

2. When someone performs services at another's request, and where there is no family relationship, it is presumed that a promise to pay the reasonable value may be implied.

3. The Dead Man Statute was waived when counsel for defendant permitted appellant to testify about the services rendered without proper and timely objection.

The general rule is that where there is no family relationship and no

showing that the services were performed without expectation of pay, the law presumes an intention on the part of the person rendering valuable services at another's request to charge therefor, and implies a promise to pay the reasonable value thereof on the part of the person receiving such services, which may be recovered on quantum meruit. Songer v. Brittain, Mo. App., 272 S.W.2d 16; Abresch v. Schultz, Mo.App., 216 S.W.2d 134. Even though there has been no request, where valuable services are knowingly accepted by the party benefiting therefrom under circumstances which would reasonably justify the belief that the party furnishing them expected payments for the reasonable value, the obligation to pay will be inferred by law. Bennett v. Adams, Mo.App., 362 S. W.2d 277, and cases cited therein.

In Smith v. Estate of Sypret, Mo., 421 S.W.2d 9, much of the argument advanced by appellant was discussed by our Supreme Court. In reaffirming the general rule stated above, the court held that evidence showing that claimant had performed services for the decedent during her lifetime, and that he was not in a family relationship with the decedent, justified submitting the case against her estate to the jury on a quantum meruit instruction. The Court further held that the burden was on the estate to show that the services were rendered gratuitously where no family relationship between the decedent and the claimant against the estate was shown. See also Griffith v. Winebarger's Estate, Mo.App., 471 S.W.2d 941.

In the case at bar, however, the circumstances are somewhat different. The plaintiff Julia Upshaw filed a claim against the estate of Constance Johnson, stating that "from January 3, 1969 until June 8, 1969 Julia Upshaw a neighbor at the request and insistence of the deceased Constance A. Johnson provided 24 hour nursing services." Two complete hearings were had with regard to this claim. The first hearing was in the Probate Court and the second in the Circuit Court, both without a jury. Following the second disallowance of plaintiff's claim, an appeal was taken to this court. The record of the Circuit Court proceedings is the only one before us.

Therefore, the question for our determination is not whether plaintiff made a submissible case, as in Smith v. Estate of Sypret, supra, but whether, on the evidence in the record, plaintiff is entitled to a judgment. In other words, we must determine whether the court below was clearly erroneous in rendering judgment for the defendant. We must keep in mind that the qustion of credibility of witnesses is best ruled on by the trial judges. These principles, so often stated by our courts and by Supreme Court Rule 73.01(d), V. A.M.R., form the basis for our affirmance of the judgment. In this we are more than amply supported by the record.

The plaintiff's two major witnesses were Gladys Foster and Myrtle Florence, both neighbors of the deceased and of the plaintiff, who was herself the deceased's upstairs neighbor. Both of these witnesses either contradicted themselves or were extremely vague during the course of their testimony. Moreover, what they did say, even if clear, was not persuasive.

Mrs. Foster testified in substance that her visits to the deceased from January, 1969, through May, 1969 were infrequent. She admitted that the deceased worked two or three days per week until her last severe illness, which was in June, 1969. From the onset of this illness until Mrs. Johnson died, (apparently June 8 or 9, 1969, although the record is unclear), Mrs. Foster visited her five or six times, for about a half hour each time. She saw Mrs. Upshaw there "very often," performing various services such as changing the bed linen and preparing food and medicine.

Mrs. Florence's testimony was substantially the same. It was unclear whether she visited Mrs. Johnson once or twice per week, or per month, because her answer was not responsive. However, she later

specified that she visited only when Mrs. Johnson was "really sick," and then later narrowed this down to the time of Mrs. Johnson's last illness. She stayed for ten or fifteen minutes each time she visited. Mrs. Upshaw was always there when she was, and Mrs. Florence observed her changing the bed linen and helping Mrs. Johnson to sit up in bed.

Following this testimony, and that of Mrs. Upshaw, to which we will refer later, the estate presented three witnesses. The first, Mrs. Williams, was Mrs. Johnson's employer. She testified that the deceased worked for her one day a week until four to six weeks before she died, and that she *took the bus to and from work.*

The second, Gladys Foster (unrelated to the first witness, although bearing the same name), also a neighbor of the deceased, visited her twice during her last illness, once to run errands and cook, and the second time to take her to the hospital on June 8, 1969. Mrs. Upshaw was present both times, but was not doing any "service" for the deceased. Mrs. Foster came over both times at the request of Mrs. Johnson.

Henrietta Snowden, a long time friend of the deceased, testified that she visited her regularly, at least once a week, sometimes two or three times. She never saw Julia Upshaw do anything for the deceased, in fact, she only saw her there once, during the last illness. She testified that Mrs. Johnson was very independent, "a person who wouldn't let you do too much for her." Mrs. Snowden verified the plaintiff's witnesses' testimony that Mrs. Johnson was often in bed, but explained that she had a heart condition which required frequent rest. She occasionally saw one or two of Mrs. Johnson's neighbors there, but not Mrs. Upshaw, except on the one occasion.

 On the basis of the above testimony, we conclude that the plaintiff failed to establish her claim for services to the deceased. Her own witnesses stated that they visited the deceased with any frequency only during her last illness in June of 1969, which lasted for about a week. On the other hand, the estate's witnesses established that deceased worked until May of 1969, that Mrs. Upshaw's "services" were never observed by the deceased's friend and most frequent visitor, Mrs. Snowden, and that the deceased herself called someone other than the plaintiff when she needed assistance. It is clear that the outcome of this case depends on the credibility of the witnesses, and we see no reason, in light of the above, to disturb the lower courts' evaluation in this respect.

One other matter remains for our determination, and that is the question of Mrs. Upshaw's testimony. Appellant claims that the Dead Man's Statute[1] was waived by respondent's failure to make a timely objection, and therefore, the court erred in excluding this testimony.

 In general, the incompetency of a witness is waived by the failure to object to the witness' testimony prior to the time the testimony is given. State ex rel. Community Heating & Air Conditioning Co. v. Schwartz, Mo.App., 452 S.W.2d 243; State v. Emrich, Mo., 250 S.W.2d 718. Objections to testimony on the basis of the Dead Man Statute must be timely and sufficiently exact to inform the court why the witness is disqualified. This is for the reason that the witness is not incompetent for all purposes. Ashley v. Williams, 365 Mo. 286, 281 S.W.2d 875.

 In this case, the appellant testified at length as to the deceased's physical condition from January to June of 1969, and the various services she performed for the deceased during this period. At least twice during her testimony, appellant mentioned something she said to the deceased or the deceased said to her. *No objection was made by respondent until appellant at-*

I. Section 491.010, RSMo 1969, V.A.M.S.

tempted to answer the *twentieth* question asked by her attorney. By this time, we think it clear that respondent had waived the Dead Man's Statute. See cases cited, supra.

However, although the lower court erred in its ruling on this point, it makes no difference in the final outcome for several reasons. First, under our de novo review, we consider so much of the evidence as we deem admissible and exclude from our consideration evidence improperly admitted. K–V Builders, Inc. v. Thomas, Mo.App., 353 S.W.2d 130; Supreme Court Rule 73.01(d), V.A.M.R. Therefore, although Mrs. Upshaw's testimony was inadmissible, and ordinarily we would not consider it, we will do so here because we believe there was a waiver of the Dead Man Statute.

Second, although there was a waiver of the Dead Man Statute appellant failed to take advantage of it. He made no offer of proof after the trial court ruled against him as to what further testimony would be given by Mrs. Upshaw. As a result, the issue has not been preserved for appeal.

Third, the fact remains that appellant did testify at some length before any objection was made and sustained. The trial judge had the opportunity of judging her credibility as he heard her testimony. Obviously, he did not believe her. While it is true that in a court-tried case our review includes both the law and the evidence, however, where the factual issue can only be determined from directly conflicting oral testimony, we defer strongly to the trial court's findings on the matter of credibility. Myers v. Myers, Mo.App., 480 S.W.2d 74.

Therefore, as we stated earlier, since the outcome of this case depends solely on the credibility of witnesses, we defer to the findings of the trial court and will not disturb its findings. Supreme Court Rule 73.-01(d), V.A.M.R.

We agree with the trial court that this claim for services cannot be upheld. The judgment is affirmed.

SMITH, SIMEONE and KELLY, JJ., concur.

