**FIRST COMMUNITY STATE BANK OF SAVANNAH, Appellant,**

v.

**H. Duane PEMBERTON, Respondent.**

**STATE ex rel. FIRST COMMUNITY STATE BANK OF SAVANNAH, Relator,**

v.

**H. Duane PEMBERTON, Respondent.**

**STATE ex rel. FIRST COMMUNITY STATE BANK OF SAVANNAH, Relator,**

v.

**Honorable Fred E. SCHOENLAUB, Respondent.**

**Nos. KCD 26039, 26054 and 26092.**

Missouri Court of Appeals, Kansas City District.

April 2, 1973.

Kenneth Cohn, Theodore J. Furry, Birmingham & Furry, Kansas City, for appellant-relator.

John C. Danforth, Atty. Gen., Gene E. Voigts, 1st Asst. Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, C. J., and SHANGLER, PRITCHARD, SWOFFORD and WASSERSTROM, JJ.

WASSERSTROM, Judge.

On December 30, 1971, the Commissioner of Finance took possession of the First

Community State Bank of Savannah pursuant to the authority of § 361.300 RSMo 1969, V.A.M.S. Within ten days thereafter, the Bank filed in the Circuit Court of Andrew County under the provisions of § 361.360 a motion to require the Commissioner to show cause why he should not be enjoined from continuing in possession of the Bank's business and property. To that motion, the Commissioner filed a motion to dismiss on the ground that the Bank's motion for a show cause order had not been authorized by its Board of Directors. A hearing was held upon the Commissioner's motion, at the conclusion of which the circuit court sustained the motion to dismiss. The Bank duly filed an appeal from that order. In addition, it filed in this Court its applications for a writ prohibiting the Commissioner from liquidating the Bank pending appeal and for writ of mandamus to require the trial court to hold a show cause hearing under § 361.360. This Court issued a preliminary writ of prohibition ordering the Commissioner to refrain from liquidation until hearing in the circuit court or further order of this Court; and a preliminary writ of mandamus ordered the circuit court to show cause why it should not issue an order for a hearing as to the propriety of the Bank seizure. By stipulation of counsel the appeal and the two writ proceedings have been consolidated.

The only issue to be decided is whether the proceeding instituted in the circuit court was defective because of inadequate authorization on behalf of the Bank.[1] The facts are undisputed that the proceeding was filed by attorneys chosen by Mr. Hayden, the Bank's president, and that this action was taken by his sole decision. The facts are further undisputed that the Board of Directors had neither specifically authorized nor disapproved the filing of the court proceeding. The Commissioner's ar-

gument, which was sustained by the trial court, is that Hayden had no authority to make this decision and that the proceeding under § 361.360 could only be instituted pursuant to resolution of the Board of Directors.

The Bank counters with three arguments. It argues first that Hayden as president had inherent power to institute this action. It argues secondly that if Hayden did not have power to act on his own initiative, then his action was subsequently ratified by the Board of Directors and also by a majority of the stockholders. Thirdly, the Bank argues that the failure to issue a show cause order resulted in it being deprived unconstitutionally of property without due process of law, in that it had no opportunity to show that it was not in fact insolvent. Since we sustain the first of these arguments, it will be unnecessary to discuss the second and third.

There is a conflict of decisions throughout this country as to whether the president of an ordinary business corporation has inherent authority by virtue of his office to prosecute and defend litigation on behalf of his corporation. 19 C.J.S. Corporations § 1066(c); 2 Fletcher Cyclopedia of Corporations, § 618; "Power of President of Corporation to have Litigation Instituted by it Where Board of Directors has Failed or Refused to Grant Permission" 10 A.L.R.2d 701. No Missouri case has passed directly on this subject. However, in Chamberlin and Churchill v. The Mammoth Mining Co., 20 Mo. 96, the Missouri Supreme Court held that a corporate president was competent to confess judgment for the corporation. The Chamberlin case has been cited in support of the rule that a president has inherent power to manage litigation on behalf of his corporation. Coleman v. W. Va. O. & O. L. Co., 25 W.Va. 148, l. c. 168. In discussing the

1. The Commissioner filed a motion to dismiss the prohibition proceeding in this court on the ground of failure to show authorization of the proceeding by the Bank's Board of Directors. That raises

the same issue as is presented in the case proper. The motion is hereby overruled for the reason that authorization by the Bank president is sufficient, as more fully developed in this opinion.

Chamberlin case, the West Virginia Supreme Court held at page 171 of its opinion that the true reason underlying the Missouri decision is "that he has the inherent power as president to conduct the litigation of his corporation, provided his corporation is one whose ordinary business gives rise to much litigation, *as a bank* or such a corporation as the West Virginia Oil and Oil Land Company." (Emphasis added)

■ It is not necessary, however, to decide between the multitude of cases involving ordinary business corporations, nor to determine whether the Coleman opinion correctly interpreted the Chamberlin case. The reason why such determinations are unnecessary here is that the corporation involved in the case at bar is a banking corporation, rather than an ordinary business corporation. In the case of banking corporations, there is apparently unanimity among the courts that the bank president does have the inherent right to control the bank's litigation, absent some contrary provision by statute or bylaw or express contrary action by the board of directors. As stated by the annotator in 10 A.L.R.2d, § 4, l. c. 705:

"There seems to be an almost universal concurrence in the conclusion that the conduct of a banks' litigation is one of the powers inherent in the office of president."

To the same effect see also 10 Am.Jur.2d, Banks, § 130, p. 129; 9 C.J.S. Banks and Banking § 679; 4 Zollman, Banks and Banking, § 2504.

■ Neither the Missouri statutes nor the corporation bylaws contain any provision inhibiting the conduct of litigation on behalf of the Bank by its president. § 362.245 RSMo., 1969, V.A.M.S., does provide that "[t]he affairs and business of the corporation shall be managed by a board of directors". However, § 362.046 of the same chapter further provides that the by-laws of the corporation "may contain any provisions for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of agreement".

Article IV, section 6 of the bylaws of this Bank provides that its president "shall be the principal executive officer of the corporation and shall be in general control and manage the property and business of the corporation". This provision of the bylaws is authorized by the statute and is consistent with the existence of power by the president to conduct litigation for the Bank. Although the board of directors would no doubt have had the power to make a decision binding upon the president that litigation should not be instituted, no such action was taken by the board of directors. Absent such a direction, the general law on the subject cited above authorized the president to act as he did.

There is still another and even more compelling reason for concluding that Hayden had authority to bring the court proceeding in question. There is persuasive case authority holding that even in the case of an ordinary business corporation, power to carry on litigation may be implied in favor of the president from the necessities of a particular given situation. Thus the annotation on 10 A.L.R.2d, § 5, l. c. 707, states the rule:

"While, as has been pointed out in previous sections, the institution of legal proceedings, with the exception as to banks, is not one of the ordinary or inherent powers of the president of a corporation, it will be seen from the cases in the following sections that such a power may be implied where it is necessary to preserve the corporate interests, where the management and control of corporate affairs is in the president, or where the president has been given duties of a special nature."

West View Hills, Inc. v. Lizau Realty Corp., 6 N.Y.2d 344, 189 N.Y.S.2d 863, 160 N.E.2d 622 (N.Y.Ct.App., 1959) supports

that proposition. In that case the New York Court of Appeals held:

"In this appeal, by permission, the question posed is whether the president of the plaintiff corporation, at the time the action was originally instituted, had the power, as president, to institute the action on behalf of the corporation. In answering such question in favor of the plaintiff both Special Term and the court below correctly applied the accepted principle that when there has been no direct prohibition 'the president has presumptive authority, in the discharge of his duties, to defend and prosecute suits in the name of the corporation.' [citing cases]

"This is as it should be for unless the president actually or impliedly possesses such power the corporate interests may be prejudiced if not entirely destroyed. While, ordinarily, the powers of the president of a corporation are often enumerated either in the articles of incorporation or in the by-laws, it is not usual to find in them any reference to the power to defend or institute litigation in the name of the corporation. However, such an omission does not mean that the power is nonexistent for, in situations requiring the exercise of such power to preserve and protect the interests of the corporation, it will be implied. This case presents such a situation."

Another important case in this line is Elblum Holding Co. v. Mintz, 120 N.J.L. 604, 1 A.2d 204, l. c. 207. In that case, the New Jersey Supreme Court held that a corporation president had an inherent power to take necessary steps in defense of litigation in order to preserve the corporate assets. In further holding that the president had the additional incidental right to employ counsel for that purpose, the court held:

"If, as we have seen, a president of a corporation may take the necessary steps in defense of litigation prosecuted against his corporation in order to pre-serve the corporate assets, so, in reason and justice, he may employ and authorize counsel to institute necessary legal proceedings for the like purpose of preserving the interests of his corporation. We so hold. For, in each 'instance the power exercised by the chief executive officer of the corporation is to accomplish the same results. If the president were to fail to exercise the power to protect and defend the assets of his corporation, he might well be liable to his corporation for the resultant losses. And so if the president exceeds his power the corporation may likewise look to him for any damages it may have sustained. American Insurance Co. v. Oakley, 9 Paige, N.Y., 496, 497, 501, 38 Am. Dec. 561."

The facts here bring this case within the above rule. On December 30, 1971, representatives of the Commissioner appeared at a meeting of the Bank's Board of Directors which had commenced at 8:00 a. m. The Commissioner's representative proceeded to advise the Board that in the Commissioner's opinion the Bank was insolvent and that the Commissioner proposed to seize the Bank and close its business at 9:00 a. m. unless the Board could raise additional capital in the sum of $291,000.00, before that hour. At the time of that ultimatum there was only twenty minutes left to comply with the Commissioner's demand. This was the first time that the Board as a whole had any knowledge of the alleged insolvency and of the Commissioner's intention to seize the Bank. The members of the Board had no knowledge of the details upon which the Commissioner had reached his conclusion of insolvency, but many of the members of the Board were disinclined to challenge the Commissioner's representation in that respect; yet at the same time, none of the members of the Board was willing to go so far as to sign a consent to the Commissioner's seizure of the Bank in the form circulated among them by the Commissioner's representative.

The $291,000.00 demanded by the Commissioner was not raised and the entire Bank, together with its premises, offices and records were taken into possession by the Commissioner. The record shows that immediately thereafter negotiations were actively pursued for the sale of the Bank by members of the Board, and in that connection, forms of resignation were circulated among the Board, but no sale actually eventuated. The whole situation was obviously confused, to the point that the Chairman of the Board stated in conversation to the president that "he felt like the Board could not function as a Board", and in fact, the bank did not so function following the takeover by the Commissioner.

Mr. Hayden, as well as being president of the Bank, was also a stockholder, he and his wife owning approximately 55% of the outstanding stock. He testified that in addition to his own self-interest he felt an obligation to the other stockholders of the Bank and to those of the depositors who had deposits in excess of Federal Deposit Insurance. He had been advised by lawyers that the only venue of protest or challenge to the Commissioner's seizure would be the institution of proceedings for court review within the limited period of ten days following the seizure. This all combined to create an emergency situation in which Hayden justifiably felt that he had to take prompt action in his capacity as president without any further effort to call upon the demoralized Board, whose Chairman had already expressed doubts about the propriety of any attempt to act as a Board. Hayden had good reason to act as he did. If he had not done so, then as pointed out by the New Jersey Supreme Court he might well have been liable to the corporation for any resultant losses.

For the reasons stated, we hold that the filing of proceedings in the name of the Bank under § 361.360 was authorized in the exercise of Hayden's inherent powers as president, particularly under the peculiar circumstances of this case. The writs of prohibition and mandamus are made permanent, and the cause is remanded. The appeal is dismissed, since superseded by the writ proceedings. The usual assessment of costs against the losing party will not be made here, since the Missouri Statutes make no provision for the allowance of costs against the State. § 407.130 RSMo 1969, V.A.M.S.; Automagic Vendors, Inc. v. Morris, 386 S.W.2d 897, 1. c. 900 (Mo. banc 1965); Murphy v. Limpp, 347 Mo. 249, 147 S.W.2d 420 (1940).

All concur.