James L. HAYDEN, Appellant,

v.

FIRST COMMUNITY STATE BANK OF SAVANNAH, Missouri, a corporation, Respondent.

No. KCD 29693.

Missouri Court of Appeals, Kansas City District.

Dec. 27, 1978.

P. Wayne Kuhlman, Liberty, for appellant.

Richard A. Heider and Christi M. Insco, St. Joseph, Morton, Reed & Counts, St. Joseph, for respondent.

PRITCHARD, Judge.

Appellant, a former president of respondent, sought judgments upon his four count petition, the first three counts being dismissed for failure to state a cause of action, and the fourth count being dismissed upon appellant's acknowledgment that the statute of limitations had run upon it. The inquiry is therefore whether Counts I, II and III of the petition state a claim for relief upon which appellant may proceed with his proof.

The litigation upon which Count I is based, and upon which appellant alleges he is entitled to reimbursement for attorney's fees and expenses paid by him and incurred on behalf of respondent, was in the case of *First Community State Bank v. Pemberton,* 493 S.W.2d 692 (Mo.App.1973). There the issue was whether the present appellant, Hayden, as president of respondent bank, had inherent authority to institute proceedings to enjoin the Commissioner of Finance, who had taken possession of the bank, from continuing in possession of the bank's business and property, notwithstanding that Hayden's action had not been authorized by the bank's board of directors. This court noted, page 694[1], the apparent unanimity among the courts, that a bank's president does have the inherent right to control the bank's litigation, absent some contrary pro-

vision by statute or bylaw or contrary action by the board of directors, there being no prohibitions of those kinds in that case. A writ of prohibition, against the Commissioner ordering him to refrain from liquidation until circuit court hearing, and a writ of mandamus, ordering the circuit court to hold a hearing as to the propriety of the bank seizure, were ordered made permanent upon the ground that the filing of the proceedings was authorized under Hayden's exercise of inherent powers as president, particularly in view of the peculiar (emergency) circumstances of the case.

Count I alleged, as here paraphrased: At all times mentioned appellant was president of respondent. Beginning on December 29, 1971, he found it necessary to employ counsel for the purposes of litigation regarding the closing of the bank by the Commissioner of Finance. He incurred attorney fees and expenses and did pursue and file litigation successfully on behalf of respondent. Respondent's stockholders, at a regular meeting on January 31, 1972, unanimously adopted a resolution authorizing appellant to employ legal counsel and take the necessary legal action that he deemed proper under the facts and circumstances; and the board of directors thereafter, on July 13, 1972, formally approved and allowed and ordered paid to counsel $18,514.66, which had been incurred in the bank litigation, but payment was not made; that respondent has failed and refused to pay the attorneys employed by appellant on behalf of respondent, causing him to be required to pay the same, which he has done, in the total sum of $18,514.66. Appellant incurred a further fee for legal services on behalf of respondent to attorney McIlroy, Sr., of Bowling Green, Missouri, in the amount of $250.00. Demand was made on May 13, 1974, for payment of said expenses, but respondent refused and still refuses to make payment.

In resisting appellant's claim to reimbursement of his paid attorney fees, and those incurred by him, respondent relies upon the fact that the Commissioner of Finance had taken possession of its business and property under § 361.300, et seq., RSMo 1969, first arguing that the posting of the notice of the Commissioner of Finance acts as a bar to any proceedings against the bank under § 361.300(3). That section provides: "The posting of * * * a notice by the commissioner that he has taken possession of any such corporation shall be sufficient to place all its assets and property, of whatever nature, in the possession of the commissioner, and shall operate as a bar to any proceedings whatever whether in law or in equity, against any incorporated bank or trust company, or its assets, and if any such action is begun, then all such proceedings shall be summarily dismissed and for naught held, upon the certificate of the commissioner being filed in such cause, showing that he has taken possession of the assets of such bank or trust company, * * *." Taken in connection with this statutory provision is § 361.430 2., "No corporation, association or individual having notice or knowledge that the commissioner has taken possession of such corporation, shall have a lien or charge against any of the assets of such corporation for any payment, advance or clearance thereafter made, or liability thereafter incurred." These statutes clearly have to do only with transactions with a banking or trust company organization in its usual course of business after the commissioner has taken charge—claimants must thereafter deal with the commissioner in his official status, and if not so dealt, then any action shall be subject to summary dismissal, and there shall be no lien, charge or liability against the assets of the corporation, unless established by proceedings against the commissioner, and not against the corporation alone. These statutory provisions cannot have application to proceedings to test the legality of the taking of possession by the commissioner of the corporation, which proceedings by way of an injunction suit is specifically authorized by § 361.360. And, as noted, appellant, as president of the

bank, was held to have the inherent power to institute such proceedings in the *Pemberton* case, supra. It could not be incumbent upon the commissioner only that he have the sole authority to employ counsel to prosecute an injunction suit under § 361.360 —such a requirement would thwart that relief against an improper taking of possession of the bank. Appellant thus was not required to seek approval of the commissioner or the circuit court to employ counsel to prosecute the claim.

 Inasmuch as it has been held that appellant, as president of respondent, possessed the inherent power to institute the underlying litigation on respondent's behalf, it can only follow that he had a concomitant power to employ counsel therefor. That litigation was for the purpose of preserving and protecting the banking corporation, and to prevent its liquidation. Clearly, it was for the benefit of the corporation, and the pleading of Count I, although not precise as to dates, and any injunction decree or settlement of the case with the Commissioner of Finance, is that it was *successful.* It is also pleaded that respondent's shareholders adopted a resolution authorizing appellant to employ legal counsel on January 31, 1972, and that its board of directors approved and ordered paid the counsel fees on July 13, 1972. These actions amount to a ratification of appellant's action, and an acceptance of the benefits flowing from the counsel's services. In *Leggett v. Mutual Commerce Casualty Company,* 250 S.W.2d 995, 998[3, 4] (Mo. 1952), it was said, "The managing officers of a corporation have the power to employ counsel without written authorization from the board of directors and if the corporation accepts the services is liable for their reasonable value. (Citing cases.)" See also *Elblum Holding Corporation v. Mintz,* 120 N.J.L. 604, 1 A.2d 204, 207[6–9] (1938). To permit respondent to have the benefits of counsel's services without reimbursement to appellant for his payment thereof would permit it to be unjustly enriched. Rest.,

Law of Restitution, § 1 (1973). The court erred in dismissing Count I of appellant's petition, except as to the allegation that he had *incurred* (but not paid) the $250.00 fee to attorney McIlroy.

In the above connection, *Commonwealth Finance Corp. v. Missouri Motor Bus Co.,* 251 S.W. 756 (Mo.App.1923), is to be distinguished, in that the case involved an *unsuccessful* attempt to resist the appointment of a receiver. That case, and others, hold that it is a matter of discretion of the trial court in allowing counsel fees to an unsuccessful litigant who contests the appointment of a receiver [whose status is the same as the Commissioner of Finance in administering the assets of a bank in failing condition, *Savings Trust Co. of St. Louis v. Skain,* 345 Mo. 46, 131 S.W.2d 566, 570[4] (banc 1939)]. See also Anno. 89 A.L.R. 1531, and later case service thereon. Here, as pleaded, there was a successful resistance to the action of the Commissioner of Finance in taking possession of respondent bank.

 Count II of appellant's petition, realleging paragraphs 1 and 2 of Count I that he was president of respondent, pleaded further that beginning on December 29, 1971, he, as president, found it necessary to employ counsel on respondent's behalf for the purposes of litigation regarding the closing of the bank by the Commissioner of Finance, also alleged that prior to the time of closing of the bank, December 29, 1971, he worked part-time and drew a salary of $6,500 per annum. That thereafter he worked full time and more for appellant and incurred personal mileage expenses in connection therewith. He prayed for $10,-835.35 judgment for reasonable compensation, and $2,040.72 expenses, and costs. There is no allegation that these services and expenses were performed and incurred at the special instance and request of respondent. But in an action for quantum meruit, that allegation is not necessary. Here, as noted above, appellant instigated the suit in his capacity as president pursuant to his inherent power. *Pemberton,* su-

pra. That position dispenses with the necessity of a request by respondent (which was then in the hands of the Commissioner of Finance) to perform the litigation services. The fair intendment of the pleading is that appellant, being authorized to institute the suit, performed services and incurred expenses beneficial to respondent, which were at least inferentially (being in connection with the injunction suit) accepted by it, although the latter fact is not specifically pleaded. The rule is well stated in *Upshaw v. Latham,* 486 S.W.2d 656, 658 (Mo.App. 1972), "Even though there has been no request, where valuable services are knowingly accepted by the party benefiting therefrom under circumstances which would reasonably justify the belief that the party furnishing them expected payments for the reasonable value, the obligation to pay will be inferred by law. *Bennett v. Adams,* Mo.App., 362 S.W.2d 277, and cases cited therein." Appellant was foreclosed from receiving his regular, part-time compensation as respondent's president because of the take-over by the Commissioner of Finance. He was without compensation for his services in seeking to enjoin the take-over by the commissioner. As president, however, he was authorized to institute the injunction proceedings. According to his pleadings, that action was successful, a benefit to the bank in continuing its business. It would be inequitable to require appellant to perform those services gratuitously, and to pay from his own pocket whatever mileage expenses were expended by him. In accordance with the *Latham* case, supra, under these pleaded circumstances, the law will imply a promise by respondent to pay the reasonable value of the services performed, and to reimburse appellant for his actual expenses. Appellant is entitled to go forward with his proof, Count II being erroneously dismissed by the trial court.

■ Count III of appellant's petition sounds in malicious prosecution. It is alleged that "on or about November 16, 1972, Defendant [respondent here] filed a Petition against Plaintiff alleging fraud in a transaction wherein Plaintiff, as the then President of Defendant bank, assigned without recourse a Promissory Note of one Caryl and Ruby Kent to the Omaha National Bank, * * * [which Petition] alleged that Plaintiff perpetrated fraud and misrepresentation against Defendant." The copy of the petition filed in the Kent matter is attached to appellant's present petition. By its last paragraph, it alleges that the action was brought in the name of the bank pursuant to § 361.500, RSMo 1969, as amended; and "further that this action is brought pursuant to a resolution of the Board of Directors of the First Community State Bank of Savannah adopted at a duly called meeting of said Board of Directors on November 8, 1972." § 361.500 empowers the Commissioner to prosecute and defend any and all actions and proceedings in the name of the delinquent corporation. Appellant is bound by the attachment to his Count III pleading, which shows on its face that the action was instituted by the Commissioner while he had possession of the bank. Respondent's Board of Directors then had no power or capacity to sue individually, and thus it cannot be said that the Board instigated the suit (later dismissed) so as to make respondent liable in an action for malicious prosecution. See *Wauer v. Bank of Pendleton,* 228 Mo.App. 1150, 65 S.W.2d 167, 170 (1933). The trial court did not err in dismissing Count III of the petition.

The judgment dismissing Count III of the petition is affirmed. The judgment dismissing Counts I and II of the petition is reversed, except that portion of Count I alleging the *incurrence* of $250.00 fee to attorney McIlroy (which is likewise affirmed), and as to those counts, the case is remanded for trial.

All concur.