**C. MYERS & SIMPSON COMPANY, Appellant,**

v.

**FEESE REAL ESTATE, INC., Respondent.**

**No. WD 36817.**

Missouri Court of Appeals, Western District.

Jan. 21, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 4, 1986.

James W. Gallaher (Bushman, Neff, Gallaher & Brown, of counsel), Jefferson City, for appellant.

Charles E. McElyea (Phillips, McElyea, Walker & Carpenter, of counsel), Camdenton, for respondent.

Before SOMERVILLE, P.J., and PRITCHARD and BERREY, JJ.

PRITCHARD, Judge.

In a trial to the court on appellant's claim for one-half of a real estate commission in the amount of $40,000, judgment was entered for respondent.

The property in question adjoins the business route of U.S. Highway 54 in Lake Ozark, Missouri, and was owned by H & E Investors, Inc. Appellant's place of business is next to this property. H & E had previously listed the property with appellant, but that listing was terminated by Al Elam, H & E's president. On December 22, 1980, H & E gave respondent an exclusive listing to June 22, 1981, which was extended by another listing until March 9, 1982, under the date of December 9, 1981. Appellant's agency sign remained on the property after its listing was terminated by H & E.

Although the exact date is not in the record, in early December, 1981, appellant's salesman, Wilhelmi, showed the property to Carl Barnes and his brother-in-law, Mike Morris, and discussed with them the purchase price and interest rates. There were some Osage Outdoor advertising signs on the property, and the Barnes asked appellant to have the Barnes' attorney, Warren Donaldson, draw the contract for sale because of the sign. Donaldson did draw the contract between the Barnes and H & E; he called appellant for a legal description which appellant supplied; and Donaldson negotiated the release of the sign leases, in which appellant did not participate, but respondent did. Respondent had advised Donaldson that it was the listing agent in December or early January.

Respondent's Don Feese had a meeting with Donaldson on December 8th or 9th, 1981, during which Donaldson indicated that he had a client interested in the property, but did not tell Feese the client's name. Appellant's Jim Simpson had a meeting with Don Feese on December 14, 1981, during which he told Feese that Donaldson was writing up a contract for H & E's property. Simpson testified that he told Feese the potential buyer was Carl Barnes, but Feese testified that he was not told by Simpson who the buyer was.

In December (1981) or early January, 1982, the Barnes asked Donaldson to hold up the contract which they had signed until they gave him authorization, which they later did, and on February 23, 1982, Donaldson mailed the signed contract with a $10,000 down payment to respondent. It was signed by H & E on March 1, 1982. A copy of Donaldson's transmittal letter to respondent was sent to appellant.

The closing of the contract was had at a bank on May 3, 1982, there being present the Barnes, Al Elam, and Doug Varner, a representative of Donaldson's office. Appellant attempted to participate in the closing, but was not allowed to do so, and thereafter Wilhelmi asked Feese for appellant's share of the commission, to which Feese responded that he had nothing to say to them.

The trial court's judgment recites that appellant elected to submit its case on Count I of its first amended petition, and therefore Count II was dismissed. Count II pleaded that respondent was liable, under a contract implied in law, to pay appellant a $20,000 commission. Count I does not plead an implied contract, i.e. in quantum meruit, yet in Point I of its brief, appellant states that it is entitled to recover the value of services rendered on a contract implied in law when it is proved; that it rendered services which benefitted respondent; respondent knowingly accepted and retained the services; appellant rendered the service with the expectation of being paid under circumstances where it would be unfair to not pay it for these services; and the value of the service was proved. With considerable merit, respondent contends that the appeal should be dismissed because appellant abandoned its implied contract (quantum meruit) claim of Count II, and elected to submit on Count I, which did not allege a contract implied in law, but did allege an oral agreement between the parties. This court cannot find any allegation of an oral agreement, unless it could arise under the allegation that there was a custom and practice among realtors of the area to split commissions on a shared basis between the listing and selling broker, a matter which will be later discussed. Regardless of the deficiency in the pleading of Count I, the proof will be examined to see if recovery was justified on a quantum meruit theory.

The evidence shows that appellant did not at the time the Barnes came to the property have a listing from H & E for its sale. Respondent did have an exclusive listing. The Barnes contacted appellant's salesman, Wilhelmi, because they saw its real estate sign on the property, which was unauthorized by H & E. The Barnes then went to their lawyer, Donaldson, with respect to the removal of Outdoor Advertising signs, the presence of which was an impediment to the purchase. It was Donaldson who made the contact with respondent that there were prospective purchasers although he did not then reveal who they were. Donaldson, with Don Feese's help, was successful in resolving the sign issue. These two, along with the Barnes, had numerous discussions about the negotiations and the contract, which Donaldson prepared and delivered to respondent. Appellant had no part in any of the negotiations.

Donaldson had informed Feese about December 9, 1981, that investors were still interested in the H & E property. Sometime between that date and December 11, a meeting was scheduled at Donaldson's office to show the potential investors the property. When Feese arrived, Donaldson and Barnes indicated that they had already seen the property, and the three did not

walk the property corners. Thereafter, about December 14, 1981, Jim Simpson came to respondent's office and informed Feese that he had a potential buyer for the property, but according to Feese, no names were mentioned. Simpson did advise Feese that he would write a contract, and Feese told him that if there was another contract involved, to submit it, and he would pass it on to the sellers. According to Feese, he was not aware that appellant had shown the property to the Barnes or was in any way involved with the Barnes purchasing it. Appellant made no claim for a part of the commission until the closing date.

The most important factor in determining whether a broker is entitled to a commission is whether the evidence shows he was the procuring cause of the sale. *Kyle v. Kansas City Life Insurance Co.,* 356 Mo. 331, 201 S.W.2d 912, 913 (1947); *Wright v. Jaegeris,* 427 S.W.2d 276, 281 (Mo.App.1968). The trial court, as the trier of fact, was entitled to believe that at the time Wilhelmi showed the property to the Barnes, they had made no decision to purchase the property. The trial court was authorized to find that the Barnes would not have purchased the property unless the Outdoor Advertising sign was removed. That was brought about by Donaldson and Feese, and thus respondent was the procuring cause of the sale, and indeed, worked out all of the details from the time of the contract until the closing date without appellant's assistance.

In the case of *Zabol v. Lasky,* 555 S.W.2d 299, 301 (Mo. banc 1977), the court stated that in order to support a quantum meruit claim the broker "was required to establish not only an implied contract to pay for his services but also that his acts with reference to the ultimate sale were the efficient and procuring cause thereof." In order to raise a quantum meruit claim, there must be a request for services, or if there is no express request, there must be valuable services rendered which are *knowingly* accepted by the party benefiting therefrom under circumstances which would reasonably justify a belief that the party furnishing them expected payment for their reasonable value. *Hayden v. First Community State Bank of Savannah,* 575 S.W.2d 880 (Mo.App.1978); *Upshaw v. Latham,* 486 S.W.2d 656 (Mo.App. 1972). In this case, not only was there lacking an express request for appellant's services, but there was also lacking evidence that respondent was tendered the Barnes as purchasers by appellant, and *knowingly* accepted that benefit, as the trial court could have found, and thus there was no implied contract to pay a commission, as well as showing that appellant produced purchasers who were then ready, willing and able to buy on seller's terms.

As to appellant's claim that there was a custom or practice for brokers to split commissions in the Lake Ozark area, the only evidence on that subject were two previous transactions. In one of these, there was an express provision contained in the contract. In the other, there was no express provision for a division of the commission in the contract, but such a division was provided for in the information sheet of a multi-list, called a "dope sheet". This evidence is insufficient to support the claim of a custom or practice to share commissions.

Under *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), there is no firm belief that the judgment is wrong. There is substantial evidence to support it, and it does not erroneously declare or apply the law.

The judgment is affirmed.

All concur.